Case 43.—PROSECUTION AGAINST JACOB BISHOFF ON IN-
DICTMENT FOR MURDER.—Sept. 25.

## Bishoff v. Commonwealth.

Appeal from Jefferson Circuit Court (Criminal Branch.)

JOSEPH PRYOR, Judge.

Defendant convicted and appeals affirmed.

1. Criminal Law—Appeal—Verdict on Conflicting Evidence—
   Where, on the issue of the insanity of accused on trial for
   crime, the testimony is conflicting, the verdict of the jury
   is conclusive on appeal.

2. Same—Arraignment—Sufficiency—An order reciting that accused
   was brought into court accompanied by his counsel, and the
   court, with consent of accused, dispensed with the arraign-
   ment, and the defendant pleaded not guilty, is in conformity
   with Cr. Code Prac. Sec. 155, providing that an arraign-
   ment defined by section 154 is the reading of the indictment
   by the clerk to the defendant, asking him if he pleads guilty
   or not guilty, shall only be made on indictments for felony,
   and may be dispensed with by consent of defendant.

3. Same—Exceptions—Necessity—Where accused did not except
   to the failure of the clerk to state to the jury accused's plea,
   as required by Cr. Code Prac. Sec. 219 nor rely on it as a
   ground for a new trial, the court on appeal could not reverse
   a conviction therefor.

4. Same—Harmless Error—Erroneous Admission of Evidence—
   Where, on a trial for crime, the court, after the admission
   of evidence, excluded it as incompetent, the court on appeal
   must assume that the jury did not consider it, and that ac-
   cused was not prejudiced by its temporary admission.

5. Same—Reception of Evidence—Objections—Exceptions—Where
   the record in a criminal case does not show that an objection
   to the admission of evidence was passed on by the court, or
   that it was asked to rule on the objection, or that its failure
   to do so was excepted to by accused, the objection will not
   be considered on appeal.

6. Same—Record—Omissions—Affidavit to Supply—Sufficiency—
   The affidavit of counsel for accused, filed on a motion for new
   trial, averring that it was affiant's "impression" that an ob-
   jection to the admission of evidence was overruled, is not

sufficient to supply the omission in the record which does not show that the objection was ruled on or that the court's failure to do so was excepted to.

7. Witnesses — Competency — Attorney and Client — Confidential Communications—An Attorney who had acted as attorney in a civil matter for one on trial for crime, is competent to testify with respect to his knowledge of accused's condition of mind.

8. Criminal Law—Trial—Separation of Witnesses—An attorney is not subject to the rule requiring the separation of witnesses in a criminal case, and the fact that he was not sent from the courtroom with the other witnesses during the trial does not exclude him from testifying.

EDWARDS and OGDEN attorneys for appellant; N. B. HAYS, attorney general and C. H. MORRIS for commonwealth.

(No briefs—record out of office.)

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

By this appeal the reversal of a verdict and judgment of the Jefferson circuit court, criminal division, convicting appellant of the murder of his wife and fixing his punishment at death, is sought, the trial having followed by some months the return of an indictment by the grand jury, charging him with the crime. Appellant's motion for a new trial in the lower court was based on numerous grounds, but those relied on for a reversal of the judgment may be included in two propositions: that is, appellant contends (1) that the judgment should be reversed because the record fails to show that the appellant's plea was stated to the jury, after it was sworn and when the indictment was read, or at all; (2) because of the admission by the trial court of incompetent evidence.

The crime with which appellant is charged, according to the evidence, was committed under circumstances of extreme brutality. While his wife, Julia Bischoff, was engaged with Mrs. Derne in carrying coal into the house of Mrs. Delkan, a sister of Mrs. Bischoff, appellant came from a nearby alley, and approaching her, said: "You son of a bitch, I got you

just where I want you," at the same time firing his pistol at her.  The wife then ran from the pavement into the street, he continuing to shoot at her until she fell dead on the pavement to which she had returned. There were five shots, all of which took effect upon the person of Mrs. Bischoff, three of them entering the heart.   Immediately after firing the last shot, appellant said to his wife:  "You son of a bitch, you want a divorce, I give it to you," thereby disclosing the motive for the crime.   He then reloaded his pistol and attempted to make his escape, but was overtaken by two policemen, at one of whom he shot twice, before submitting to arrest.   It appears from the evidence that appellant's wife had a few days before the homicide, instituted against him, in the Jefferson circuit court, a suit for divorce; that he was a man of violent and ungovernable temper, had frequently assaulted and beaten his wife, and threatened to kill her, saying on more than one occasion in connection with such threats, "I will do it, and I will get as clear as a whistle."   Only a few days before she was killed, Mrs. Bischoff, on account of a beating received at the hands of her husband, left his home, and went to that of her sister, Mrs. Delkan, on Clay street in the City of Louisville, in front of which the homicide occurred.

The only defense interposed by appellant on the trial was that he was insane at the time he killed his wife, and by reason thereof not responsible for the crime.   A great deal of evidence was introduced through members of his family and others, in the effort to prove that a year or more previous to the homicide, appellant in a collision between his market wagon and a street car, was thrown to the street and received a cut on his forehead and bruises on other parts of his body; that the hurts thus received required the care of a physician, and confined him to his bed or room for several days; that his condition of mind was not the same after he received these in-

juries as before, and that it later became so unsound he was incapacitated for his usual occupation, which was that of a market gardener; that he became peculiar in his ways and violent toward his family, and that his unsoundness of mind also manifested itself in irrational conversation and by such conduct as getting on his knees in bed at night, and sometimes under the bed, and doing other things equally unusual. Three physicians, Drs. Pope, Boggess and Samuels, the first an alienist of prominence, were introduced for appellant. One of them knew him before he was hurt in the collision with the street car. The other two became acquainted with him after his incarceration in jail for the murder of his wife, and their examination of him was made only a few days before the trial. Two of these medical experts, from the examination they had made of appellant, and in answer to certain questions hypothecated upon the character of the injuries he received in the car collision, particularly the wound on the forehead, and his subsequent peculiarities of conduct, expressed the opinion that he was of unsound mind. The third physician, though inclined upon the same hypotheses to think him of unsound mind, did not freely commit himself to that opinion. On the other hand, there were several witnesses introduced for the Commonwealth who testified, in substance, that appellant is an illiterate man of violent temper, uncouth manners, and harsh in his bearing towards his family, but that they did not regard him a person of unsound mind, nor had they discovered that his conduct after the collision of his wagon with the street car differed from what it had been before. In their opinion he had attended to his market garden and business affairs after that occurrence and down to the death of his wife, as he had done before. One of the witnesses, Maj. R. C. Davis, was the attorney of appellant in the divorce suit brought by his wife and had acted as his attorney in other matters in pre-

vious years. Appellant frequently went to see Davis, and consulted him as to the preparation of his defense in the divorce case. Maj. Davis testified that he did not think appellant was a man of a high order of intelligence, but had seen no change in his mind after the collision with the car, except on one occasion when he called at his office while in a state of intoxication, seeing which, witness told him to leave, and return when he got sober. Appellant took his advice and left, but later returned to the office sober, and in his usual condition of mind. Another witness Charles Veling, a deputy county court clerk, testified, that by request of appellant's attorney he called at the jail to take his acknowledgment to a deed; that upon meeting him he read him the deed and asked him if he understood it, appellant replied that he did, and upon being told to sign it, said he was nervous and requested Veling to write his name and let him make his mark, but this being declined he wrote his own name, in German, to the instrument, and immediately thereafter duly acknowledged it. Veling further testified that appellant seemed to understand the transaction, and talked and acted intelligently while he was with him. Three physicians were introduced in rebuttal by the Commonwealth, and interrogated as to the condition of appellant's mind. Two of them, Drs. Marshall and Rapp, said they were called to see him when he was hurt by the car. They dressed his wounds, and Dr. Marshall, after attending him about 10 days, discharged him as well. The wounds, they testified, consisted of a cut on the head and bruises on the hip and leg. None of them were dangerous; the cut on the head went through the skin of the forehead, but did not wound or fracture the skull bone, or affect the brain. On cross-examination these two physicians were asked if it was possible that the cut in the forehead could affect appellant's mind. In reply they were unwilling to say such a result was not possible,

but thought it very improbable.  No discovery was
ever made by them that appellant's brain was affected
by his wounds, or information given them by his fam-
ily, that there was any change in his mind.  Dr. Rapp
also visited appellant in jail, to collect of him a surgi-
cal bill for attending him, as stated.  Appellant had
previously obtained of witness a statement of the ac-
count for use in settling with the street railway com-
pany.  Appellant said to Dr. Rapp in jail, that he re-
membered the bill, that he had given his wife the
money to pay it and supposed she had done so, but as
she had not, the doctor could get it by calling on his
lawyer.  In this interview the witness saw nothing in
the conversation or conduct of appellant to indicate
unsoundness of mind.  Dr. Garvin, the third physician
introduced for the prosecution, is jail physician for
Jefferson county.  He testified that he had seen ap-
pellant three or four times each week since his incar-
ceration in jail and had often prescribed for him for
nervousness and probably other ordinary ailments,
but he had never seen any evidence of his being of
unsound mind.

It will be observed from the foregoing synopsis of
the evidence, that the question of whether or not ap-
pellant was of unsound mind at the time he killed his
wife, was fully gone into upon the trial.  The testi-
mony was conflicting, but the issue having been de-
cided by the jury, under proper instructions, ad-
versely to the appellant's contention, he must accept,
and this court approve the verdict of guilty, unless
the alleged errors complained of compel a reversal of
the judgment.  When one charged by indictment with
a crime or misdemeanor is put upon his trial, follow-
ing the impaneling and swearing of the jury, "the
clerk, or commonwealth's attorney, shall read to the
jury the indictment, and state the defendant's plea."
Cr. Code Prac. Sec. 219.

The record contains the following order, which was entered after the return by the grand jury of the indictment: "This day the defendant is brought into court by the jailer, and comes W. B. Hoke, his attorney, and the court with the consent of the defendant dispenses with the arraignment herein, and the defendant pleads that he is not guilty of the crime charged in the indictment." Section 154, Cr. Code Prac., requires that in every case of felony there shall be an arraignment which is "the reading of the indictment by the clerk to the defendant, and asking him if he pleads guilty, or not guilty, to the indictment." Section 155 provides, "The arraignment shall only be made on indictments for felony, and may be dispensed with by the court with the defendant's consent." The above order was entered in conformity with section 155. At the beginning of appellant's trial, an attempt was made to comply with the provisions of section 219, supra, by entering of record the following order, which appears next after the order showing the swearing of the jury. "The indictment was duly read by the clerk to the jury and"—, then follows, after a dash, this sentence: "Dr. Harris Kelly, a witness, introduced by the Commonwealth, being duly sworn * * * testified as follows:" Manifestly the above order does not comply with section 219 of Cr. Code of Practice. It only shows the reading by the clerk of the indictment to the jury, whereas, it should also say that the clerk, in addition to the reading of the indictment, stated to the jury the defendant's plea, and whether it was guilty or not guilty.

It is argued by counsel for appellant that this section of the Code is mandatory, and it must appear of record that its provisions were strictly complied with. In support of this view, the following authorities are cited: Galloway v. Commonwealth, 5 Ky. Law Rep. 213; Farris v. Commonwealth, 111 Ky. 236,

23 Ky. L. R. 580, 63 S. W. 615. We cannot better dis-
tinguish the case at bar from the authorities, supra,
than to quote Howard v Commonwealth, 67 S. W.
1003, 24 Ky. Law Rep. 91, what is said about them
in connection with the question under consideration.
"In the Galloway Case it was held that it was essen-
tial that the indictment should be read and the plea of
the defendant stated to the jury, but it was expressly
held that this duty might be performed at any time
before the close of the evidence for the prosecution,
and that it was immaterial that the indictment was
read by an attorney employed to prosecute, instead
of the clerk, or the Commonwealth's attorney. In
the Farris Case the indictment was not read, nor the
plea of the defendant stated to the jury at all, and
the case was reversed for this reason." It does not
appear from the Galloway or Farris Cases, or from
that of Hendrickson v. Commonwealth, 64 S. W. 954,
23 Ky. Law Rep. 1191—which though not relied on
by appellant's counsel, is apparently in line with the
Galloway and Farris Cases—that there was not an
exception to the failure to read the indictment and
state the plea of the defendant, or that such failure
was not made ground for a new trial.

In Howard v. Commonwealth, supra, the appellant
insisted upon a reversal because the record failed
to show that the indictment was read to the jury, or
that the plea was stated. This contention was re-
jected, the court holding, as it was shown by the
record that upon the calling of the case for trial both
parties announced ready; that a jury was impaneled
and sworn; and that the defendant, in the presence of
the jury, thereafter waived arraignment and entered
a plea of not guilty, this amounted to a substantial
compliance with section 219, Cr. Code Prac. There-
fore, the failure to read the indictment and state the
defendant's plea of guilty, did not authorize a re-

versal. It was also held in the Howard Case, that there could be no reversal for a failure to comply with the provisions of this section, unless it had been assigned as a ground for a new trial, which was not done in that case.

In Meece v. Commonwealth, 78 Ky. 586, the record was silent as to whether the defendant was arraigned, or any plea entered in his behalf, for which reason a reversal was asked. In response to this contention the court said: "The record fails to show that the plea of not guilty was entered, but it is manifest from the entire record that an issue was made and the accused had a fair and impartial trial."

In Griffin v. Commonwealth, 66 S. W. 740, 23 Ky. Law Rep. 2148, it is said: "The record does not show that the defendant pleaded not guilty, or that he was arraigned, or waived arraignment, or that his plea was stated to the jury, or that the indictment was read to them. It is insisted by the appellant that the judgment should be reversed for these reasons. No arraignment is necessary except in felony cases. In the grounds for new trial, appellant did not rely on any of the matters referred to. * * * "

In Ison v. Commonwealth, 66 S. W. 184, 23 Ky. Law Rep. 1805, the same question arose, in disposing of which the court said: "The appellant in his brief assumes that the indictment was not read to the jury, nor the plea of the defendant announced by any one, and insists upon a reversal for that reason, citing in support, Farris v. Commonwealth, 63 S. W. 615, 23 Ky. Law Rep. 580. It is true that the opinion in the case, supra, decides that such a failure is ground for a reversal, but we apprehend that the error complained of in that case was objected to at the time of the trial and relied on as one of the grounds for a new trial. Nothing of that kind appears in the

Bishoff v. Commonwealth.

bill of exceptions in the case at bar.   It is true, that
at the close of the bill of exceptions this language is
used:    'This being all that was done, or all the pro-
ceedings had on said trial, or concerning same.'    We
are not authorized to assume from this statement
that the indictment in fact was not read to the jury,
and besides the failure to so read it, was not relied
upon or referred to in any manner in the motion for
a new trial.    Even if it be conceded that the bill of
exceptions should be construed to show that the in-
dictment was not read, the failure of the appellant
to make the same one of the grounds for a new trial,
precludes him from relying  on  such  omission  as
ground for reversal.   It is a well-settled rule that
appellant should state in his reasons for a new trial,
the ground upon which he thinks the prejudicial er-
ror was committed.   If the attention of the trial
court had been called to this error, if such in fact oc-
curred, doubtless the circuit judge would have grant-
ed a new trial.''

The most recent case in which this court has
passed upon the question under consideration, is
that of Herr v. Commonwealth, 91 S. W. 666, 28 Ky.
Law. Rep. 1131, in which it was also held, that
though the record did not show that the indictment
was read, or that the plea of the defendant was
stated to the jury, such omissions would not author-
ize this court to assume that these requirements of
the Code had not been complied with, unless it were
made to appear that such failure had been excepted
to by the defendant and relied on as a ground for a
new trial.   In the case at bar, it does not appear that
appellant either excepted to the failure, if any, to
state his plea to the indictment, or relied upon the
omission to do so, as a ground for a new trial; we
are, therefore, without power to now consider it, or
to reverse the judgment therefor.

The second contention of appellants is, we think, equally untenable. The testimony, in part claimed to have been improperly admitted on the trial, was that of Mrs. Derne, in respect to appellant's having thrown his wife's sister, Mrs. Delkan, over a fence and broken her limb. As it appears that this testimony, after its admission and during the cross-examination of the witness, was wholly excluded by the court, as incompetent, we must assume that the jury in obedience to the court's admonition did not consider it, and therefore appellant could not have been prejudiced by its temporary admission. It is also insisted that it was error to allow Mrs. Delkan to testify as to an act of personal violence of appellant to her. Upon being asked by counsel for the Commonwealth, why Mrs. Bischoff went to her house, Mrs. Delkan said: "Because Mr. Bischoff, her husband, abused her and whipped her on the 19th. I went home with him to the country and he whipped her, and I went to take her part and he hurt her, also he throwed me across the rain barrel and broke my"—. At this point the testimony was objected to. It is apparent from the record that the particular injury inflicted upon the witness was never mentioned by her. The objection interposed stopped her. It is probable that the testimony of Mrs. Delkan on this point was offered by the prosecution to show a motive for the homicide, as it apparently referred to what caused Mrs. Bischoff to leave appellant, tended to show his ungovernable temper and brutal treatment of her and also of the sister for trying to protect her, both being assaulted by him at the same time. It is not necessary, however, to determine whether or not it was competent. The record does not show that the objection to it was passed on by the court; that he was asked to rule on it, or that his failure to do so was excepted to by appellant, for which reason we

cannot consider it. Stinson v. Commonwealth, 96 S. W. 463, 29 Ky. Law Rep., 733; Hendrickson v. Commonwealth, 64 S. W. 954, 23 Ky. Law Rep. 1191. It is true an affidavit of one of the counsel filed on the motion for a new trial, states it was his impression that the objection was overruled, but this is not sufficient to supply the facts omitted from the record. If mere impressions as to a matter of such importance can be allowed to have any weight, it would be as reasonable to indulge the impression that the failure of the witness to complete the answer to the question asked her, was because the objection made to same by appellant's counsel was sustained by the court, and the answer excluded.

We also fail to find any error in the admission of the testimony of Maj. Davis. Though he had been the lawyer of appellant in other matters, he did not represent him in this case; his testimony did not relate to any matter growing out of his relations to appellant as attorney, and was in no sense of a confidential character; it only related to his knowledge of appellant's condition of mind. The fact that Davis was not placed under the rule and sent from the court room with the other witnesses during the trial, should not, as insisted by appellant, have excluded him from testifying. As an attorney of the bar and member of the court, he was not subject to the rule requiring the separation of the witnesses. Though the instructions are not criticised by counsel, we have carefully examined, and find them correct in every particular. If, as intimated by counsel, appellant's condition of mind has grown so much worse since the trial as to demonstrate his insanity, the Code provides a way by which that matter may yet be inquired into.

As on the whole case we find no error that can be said to have prejudiced the substantial rights of appellant, the judgment is affirmed.