CASE 67.—PROSECUTION AGAINST DEMETRI NIOUM FOR
MALICIOUS SHOOTING AND WOUNDING.—Mch. 26.

# Nioum v. Commonwealth

Appeal from Mason Circuit Court.

J. P. HARBESON, Circuit Judge.

Defendant convicted and appeals—Affirmed.

1. Criminal Law—Appeal—Necessity for Exceptions—Exceptions
—Rulings as to Evidence.—Cr. Code Prac. section ·281, pro-
viding that decisions of the court on motions for a new trial
shall not be subject to exception, prevents consideration of
alleged false translation of testimony and of a letter, both
in a foreign language, where no objection was made at the
time, but complaint was first made on motion for new trial.

2. Same—Motions for New Trial—Newly Discovered Evidence—
Sufficiency and Probable Effect.—Defendant moved for a new
trial on the ground that his testimony and a letter had been
falsely translated to the jury, and that his ignorance of the
English language and consequent inability at the time of
testifying to detect the false translation prevented him from
then making his objection, and that he had for the first time
after trial discovered the same. Affidavits of defendant and
his counsel stated that defendant tried to secure the services
of an interpreter other than the one used, and gave it as
their belief that the interpreter had not in fact been sent by
such other interpreter to act in his place, but that his at-
tendance was procured by prosecuting witness, and stated that
the interpreter had falsely translated his testimony and the
letter, and that this fact was first made known to defendant
after trial by translating to him the reporter's notes. The
affidavit of the one who translated the notes stated that he
had read the same to defendant, and found from defendant
that the interpreter's translation was false. The affidavits
did not disclose how much or what part of defendant's testi-
mony or the letter was falsely translated, and were based
wholly on what defendant claimed he was then perpared to

say he testified on the trial without disclosing a true trans-
lation of the testimony as he claimed he gave it. Held, that
the affidavits were insufficient to authorize a new trial, since
to entitle one to a new trial on the ground of newly discovered
evidence such evidence should be of such a controlling and
decisive character as to convince the court that it will prob-
ably have a preponderating influence on a new trial.

3. Same—Evidence—Admissions by Accused.—On a criminal trial
a letter found on defendant's person when arrested, and which
he admitted writing, is competent.

4. Same—Appeal—Harmless Error — Prejudice to Defendant.—
Defendant in a criminal trial cannot complain that it does not
appear that he had interpreted to him or was enabled to
understand, or that he knew an oath was administered.

5. Same—Necessity for Exceptions.—Cr. Code Prac. section 281,
providing that decisions of the court on motions for a new
trial shall not be subject to exception, prevents consideration
of the objection that defendant was not legally sworn, where
no exception was taken at the time, or error assigned on
motion for new trial.

6. Same—Trial—Reception of Evidence—Appointment of Inter-
preters.—Though Ky. St. 1903, contain no other provision re-
specting the appointment of interpreters than section 181,
providing for their appointment in bastardy cases, and section
1034 providing for their appointment in courts of continuous
session, the courts, in the absence of statutory authority, have
the inherent power to allow the use of interpreters where
justice requires it.

7. Same—Appeal—Necessity for Exceptions.—Where no excep-
tion was taken to the action of the court in permitting ·an
interpreter to act·before or at the time he so acted or the
matter called to the attention of the court on motion for
new trial, the Court of Appeals will not consider it.

8. Same—Reception of Evidence—Interpreters—Qualifications.—
Defendant having introduced an interpreter and used him on
the trial, and no objection having been made by the Com-
monwealth, the court had the right to assume that both
parties were satisfied as to his qualifications. Consequently
there was no occasion for an examination to ascertain his
qualifications, and failure to do so is not ground of reversal.

9. Same—Appeal—Necessity for Exceptions.—Cr. Code Prac. sec-
tion 281, providing that decisions of the court on ·motions· for
a new trial shall not be subject to exception, prevents con-
sideration of the objection that the court failed to ascertain
whether one offered as an interpreter was qualified to so act,

Nioum v. Commonwealth.

where not made to the lower court in proper time, or presented on motion for new trial.

10.   Same.—Failure to have the nature and object of a waiver of a formal arraignment or of his plea of not guilty interpreted to defendant, who did not understand the English language, is not cause for reversal, where defendant did not except to such failure, or the same was not made a ground for new trial.

ALLAN D. COLE, G. W. ADAIR and VIRGIL McKNIGHT for appellant.

JAMES BREATHITT, Atty. Genl., THOS. B. McGREGOR and CHAS H. MORRIS for Commonwealth.

(No briefs—Record not in office.)

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Demetri Nioum, was indicted, tried, and convicted in the Mason circuit court for maliciously shooting and wounding Thomas James, and his punishment fixed at three years' confinement in the penitentiary. Appellant was refused a new trial, of which, and the judgment of conviction, he now complains.

Appellant and James are Greeks. Both came from Bulgaria to the United States, and later to Maysville, Ky., where they entered the service of the Chesapeake & Ohio Railway Company, the former as a common laborer in railroad construction, the latter as an interpreter of the Greek or Bulgarian language, there being a number of persons, beside appellant, from Bulgaria in the employ of the railway company unable to speak or understand the English language. It appears from the evidence that the wives of James and appellant are first cousins; that the two men were excellent friends while they lived in Bulgaria, and

continued so after they came to Maysville until about one week before the shooting of James by appellant, at which time the latter had a difficulty with some of his fellow workmen, which resulted in his quitting the service of the railroad company and going to Cincinnati, where he remained for a week, and then returned to Maysville. James seemed to have interfered at the time of the difficulty, but whether for or against appellant is not clear. He did, however, render him some assistance in getting from the railway company the wages due him. Unless appellant entertained ill-will against James for something done by the latter at the time of his (appellant's) difficulty with his fellow workmen, the record fails to furnish a motive for the shooting and wounding of James. The facts as to the shooting and wounding of James were in brief as follows: In April, 1907, James and two associates, Crager and Hughes, were on the bank of the Ohio river engaged in the pastime of shooting at a mark. Another man (Harrison) was also present, but did not take part in the target practice. The lock of the pistol with which the shooting was done got out of repair, and while James, Crager, and Hughes were trying to fix it appellant came up and without warning shot James, the ball entering his neck immediately below the jaw and passing out on the opposite side within one-sixteenth of an inch of the carotid artery, making a very dangerous and well-nigh fatal wound. After firing the shot appellant ran from the ground, and while running fired another shot at James, but without effect. He then left Maysville for Cincinnati, and a few days later was arrested not far from Maysville. Shortly after appellant's difficulty with his fellow workman, and before the shooting of James, he inquired of the latter

whether he had a gun. The shooting and wounding of James was admitted by appellant at the time of his arrest, and again as a witness on the trial, but on each occasion he claimed to have been drunk at the time of the shooting and unconscious of the act.

Appellant's motion for a new trial was based on the grounds: (1) That the circuit court erred in admitting and rejecting evidence; (2) that the verdict of the jury was influenced by passion or prejudice; (3) newly discovered evidence material to the defense ascertained after the trial, and which he could not with reasonable diligence have discovered in time to produce at the trial; (4) that the verdict of the jury is not sustained by sufficient evidence, and is contrary to law; (5) accident or surprise which ordinary prudence could not have guarded against.

The second and fourth grounds can be considered together and summarily disposed of. There is not a fact or circumstance presented by the record that tends in the remotest degree to indicate that the jury were influenced by either passion or prejudice, and the fact that they fixed appellant's punishment at three years' confinement in the penitentiary, when they might have made it five, would seem to indicate that their sympathies were to some extent enlisted in appellant's behalf, on account of his ignorance of the English language and friendless condition. Instead of there being no evidence, or not a sufficiency of evidence to support the verdict, the contrary is certainly true. Leaving out of consideration appellant's admission of guilt, the testimony of the Commonwealth which was contradicted by that of appellant in no material particular so demonstrated his guilt as to remove any vestige of doubt and close every loophole of escape. The evidence introduced

by appellant other than his own testimony failed to furnish any proof that he was, by reason of intoxication at the time of shooting and wounding James, mentally incapable of understanding the nature and enormity of the act, and the fact that he ran away so swiftly from the scene of the shooting would indicate that he was not intoxicated to an appreciable extent. It also manifests that the verdict was not contrary to law. During the trial no objection was made or exception taken by appellant to the instructions given by the court, and no criticism of them is to be found in the briefs of his counsel. In view, therefore, of the convincing proof of appellant's guilt, and the admittedly correct presentation by the instructions of all the law of the case, we are unable to perceive any ground for appellant's complaint that the verdict was or is contrary to law.

The complaint made in ground No. 1 of the admission of incompetent and the rejection of competent evidence on the trial by the court below is unsupported by the record. We have failed to find that any competent evidence was excluded by the court, or that appellant excepted to any ruling of the court excluding evidence. The evidence admitted on the trial which appellant insists was incompetent was the alleged false interpretation of his testimony given the jury by one Nick Poppes, introduced by appellant as interpreter, and the contents of a letter written by appellant in Greek, or Bulgarian, to Kosta and Nickles of Cincinnati, soon after the shooting of James, which Poppes translated into English and read to the jury at appellant's request. As to the alleged misinterpretation by Poppes of appellant's testimony and of the letter to the jury it seems sufficient to say that no objection was made by appellant at the time to

Poppes' interpretation of his testimony, or of the letter read to the jury. Indeed his complaint as to these matters was first made in the motion and grounds for a new trial, which in view of section 281, Cr. Code Prac., will prevent this court from considering it.

It is argued, however, that appellant's ignorance of the English language and consequent inability at the time of testifying to detect the alleged false interpretation given his testimony and the letter by Poppes to the jury in English prevented him from then making his objections thereto known to his counsel or the trial court, but that when after the trial he discovered for the first time that Poppes had, to the prejudice of his substantial rights, falsely interpreted his testimony to the jury, and falsely interpreted the letter written to Kosta and Nickles, this after-acquired information, being newly discovered evidence of which he was by accident deprived on the trial, entitled him to a new trial upon the third and fifth grounds filed in support thereof. We find in the record the affidavits of appellant, his chief counsel, and one Sam Roberts giving the facts intended to show the alleged newly discovered evidence, and how and when it was discovered by appellant. The affidavits of appellant and his counsel in substance recite that appellant tried to secure the services of an interpreter of Cincinnati other than Poppes to act in that capacity at his trial; that information came to him that the person to whom he wrote was not in Cincinnati and could not attend the trial, but that he had sent to act as interpreter in his place the witness Poppes, who, though unknown to appellant, was introduced by him as interpreter on the trial. Affiants, however, gave it as their belief that Poppes had not in fact been

sent by the other interpreter to act in his place, but that his attendance at the trial had been procured by James, whom appellant had shot and wounded; that Poppes by fraud or mistake had misinterpreted his testimony and the letter to Kosta and Nickles to the jury, and this fact was first made known to appellant by Sam Roberts after the trial, by the latter's translating into Bulgarian and reading to him the typewritten manuscript made from the notes of the stenographer taken in shorthand at the trial; and that Roberts is a competent interpreter of the Greek or Bulgarian language, and can likewise readily translate the English into Greek and Bulgarian. The affidavit of Roberts contains the statement that he is a baker by occupation, a native of Bulgaria, and the master of 12 languages, including Bulgarian or Greek; that he had not seen the letter from appellant to Kosta and Nickles, but had read to appellant in Bulgarian from the stenographer's transcript the interpretation given on the trial by Poppes of appellant's testimony and of the letter in question, "and finds from the defendant (appellant) Demetri Nioum that said interpretation is false and not true." None of the affidavits disclose how much or what part of the testimony of appellant was falsely interpreted by Poppes, nor do they indicate in what particular or to what extent the letter appellant wrote Kosta and Nickles was falsely interpreted by Poppes. If the affidavit of appellant or that of Roberts contained a true translation into English of the letter, a comparison of such translation with that given by Poppes found in the bill of evidence, would prove the deception, if any was practiced. The affidavits fail to set forth in substance, or at all, the facts constituting the alleged newly discovered evidence, or to show their materiality, and

are based wholly upon what appellant claims he is
now prepared to say he testified on the trial without
disclosing a true interpretation of the testimony as
he claims he gave it. The affidavits also fail to show
that Poppes is not a competent interpreter, or to im-
peach his interpretation of appellant's testimony;
nor do they, except by indirection, attack Poppes'
integrity. They express the belief of one of the
affiants that Poppes' attendance at the trial to act
as interpreter was instigated or procured by James,
the Commonwealth's witness, but state no facts to
support such belief. In our opinion the affidavits
were wholly insufficient to authorize the new trial
asked by appellant. To entitle one to a new trial
upon the ground of newly discovered evidence the
discovered evidence should be of such a controlling
and decisive character as to convince the court
that it will probably have a preponderating influ-
ence upon another trial. As said in Torain,
etc., v. Terrell, 122 Ky. 745, 93 S. W. 10,
29 Ky. Law Rep. 306: "Applications for a new trial
are addressed to the sound discretion of the court,
to be exercised according to the rules and usages of
law, and the court should regard the substantial jus-
tice of the case, equally remote from favoring negli-
gence, or exacting unreasonable diligence." Poppes'
translation of the letter written by appellant to Kosta
and Nickles, which appears in the record, reads as
follows: "Messrs. Kosta and Nickles: I am in Mays-
ville, Ky., out in the woods. I am two days up here.
I shot my cousin James. I don't know any place to
go, and I am not sure whether the police will come to
catch me or not. And now one says go to New York.
I am up here, and never eat nothing for two days,
and I have just waited up here. I am scared to go to

the city because I shot my cousin. I have that check over, and I have some money coming to me in C. H. & D. depot, and if you can get it send it to my wife and children in the old country.'' A comparison of the foregoing letter with the testimony of appellant given on the trial and interpreted by Poppes will show no substantial difference between them, and as the original was found on the person of appellant at the time of his arrest, and he admitted writing it, no reason can be urged against its competency. It was not, however, more prejudicial than appellant's own testimony, for it contains no other admissions of his guilt than he made as a witness.

Appellant and Poppes, his interpreter, were sworn and introduced as witnesses in the former's behalf after the Commonwealth introduced its evidence in chief, and it is now argued by his counsel that ''the record does not show that the appellant had interpreted to him, or was enabled to understand, or that he knew an oath was administered to him.'' Simply stated, this is a mere declaration that appellant was not legally sworn before giving his testimony. If this were true, we do not think he can complain that the Commonwealth allowed him to give his testimony without requiring him to be sworn, or having interpreted to him the meaning of the oath administered before giving it. It does not lie in his mouth to say that his testimony was less accurate or truthful than it would have been, if he had understood the meaning of the oath. Moreover a complete answer to the argument is to say that the record also fails to show that an objection was made or exception taken by appellant's counsel as to this matter at the time, nor was it assigned as error in the motion and grounds for a new trial. Consequently this court is prevented

by section 281, Cr. Code Prac., from considering it on appeal.

It is likewise insisted for appellant that the use of interpreters in the courts of this State is restricted by the Ketnucky statutes of 1903 to bastardy cases (section 181) and courts of continuous session (section 1034). While it is true the Kentucky statutes contain no other provisions in respect to the appointment of an interpreter than those referred to, the courts in the absence of statutory authority, have the inherent power to allow the use of interpreters when the ends of justice require it. If this were not true, persons charged with crime or having valuable property interests involved in litigation, and who, by reason of their inability or that of some of their witnessses to speak or understand the English language, would, in the absence of an interpreter, be prevented from asserting or protecting their rights and thereby subjected to the grossest injustice. It is also sufficient to say of this and the further complaint of appellant that the record contains no order appointing Poppes interpreter; that no objection was made or exception taken to the action of the court in permitting him to act in that capacity before or at the time he so acted; nor was the matter called to the attention of the court in the motion and grounds for a new trial. Therefore it will not be considered by this court.

It is also complained by appellant that the record fails to show that Poppes was qualified to act as interpreter. This complaint would be well founded but for the fact that the interpreter was introduced and used on the trial by appellant. This being manifest, and no objection being made by the Commonwealth to his introduction, the court had the right to assume, as it doubtless did, that both parties were satisfied

as to his qualifications and capacity to act as interpreter. Consequently there was no occasion for an examination of the interpreter to ascertain his qualifications. Obviously, it is the duty of the court to ascertain whether one offered as an interpreter is qualified to act as such, but the failure on the part of the court to perform such duty cannot be urged for a reversal where, as in this case, the necessity for its performance was obviated by the recognition of the interpreter's fitnes manifested by both the Commonwealth's attorney and defendant. Besides this ground of complaint was not made to the court below in proper time, or presented in the grounds for a new trial. Section 281, Cr. Code Prac.; Rutherford v. Commonwealth, 78 Ky. 639; Val Dalsen v. Commonwealth, 89 S. W. 255, 28 Ky. Law Rep. 340.

Appellant's final contention is that he was not legally arraigned. It is not claimed that the record fails to show a waiver of formal arraingment, or that a plea of not guilty was entered, but contended that it does not show that the purpose and meaning of the arraignment and plea were interpreted to or understood by appellant. The question here raised has time and again been decided by this court adversely to appellant's contention; the most recent case being Bischoff v. Comth., 123 Ky. 340, 96 S. W. 538. 29 Ky. Law Rep. 770. The opinion contains a review of all the cases in this State bearing on the question, and adheres to the conclusion expressed in most of them, viz., that the failure of the record to show that the defendant was arraigned, or that a formal arraignment was waived, or that his plea was entered, whether of guilty or not guilty, is not cause for reversal, unless such failure is made a ground for a new trial. See Bischoff v. Commonwealth and authorities therein

cited. The record in the case before us does not show nor is it claimed by appellant, that he objected or excepted to the failure of the court below to have the nature and object of the waiver of formal arraignment or of his plea of not guilty interpreted to him, or that such failure was made a ground for a new trial.

For the reasons indicated, the judgment is affirmed.