Jack FAIRBANKS, Petitioner-Appellant,

v.

Henry E. COWAN, Superintendent,
Kentucky State Penitentiary,
Respondent-Appellee.

No. 76–1154.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 1, 1976.

Decided March 3, 1977.

Rehearing and Rehearing En Banc
Denied April 14, 1977.

J. Vincent Aprile, II, Asst. Public Defender, Frankfort, Ky., for petitioner-appellant.

Edward W. Hancock, Atty. Gen. of Kentucky, Raymond Larson, Frankfort, Ky., for respondent-appellee.

Before WEICK, EDWARDS and PECK, Circuit Judges.

WEICK, Circuit Judge.

Fairbanks has appealed to this Court from an order of the District Court denying his application for a writ of habeas corpus. He had been convicted by a jury in the Circuit Court of McCracken County, Kentucky of the offense of sodomy (Ky.Rev. Stat. § 436.050) with Charles Crittendon. He was sentenced to two years imprisonment. He was defended by counsel from the Public Defenders office. He appealed to the Court of Appeals of Kentucky (now the Supreme Court), and his conviction was affirmed in a Memorandum Per Curiam opinion.

The recipient or victim of the sodomy, Charles Crittendon, was a friendly 31 year old adult who had the mentality of a six-year-old child. Charles had contracted infantile paralysis when he was six years old. The disease had paralyzed his throat and the palate. It severely impaired his speech, and he uttered only gutteral sounds. His father testified that it was quite difficult to understand his speech for one who was not acquainted with him. His parents were able to understand him. The father also testified that about 70% of those people who were not acquainted with the victim would not be able to understand him.

On the day the offense was committed Charles had accompanied his parents to their store in Paducah, Kentucky. He was standing outside of the store. Sometime later the parents noticed that Charles was missing and they immediately notified the police. A search ensued.

Officer Donald Fondaught of the Paducah Police Department responded to the call and went to a junk yard where there was a number of old junk cars owned by Johnson Salvage Co. He met Noel Dillard at the yard and they both started to examine the old cars in an effort to find Charles.

Dillard testified as a prosecution witness at the trial that he observed two men in the back end of a station wagon which was moving, in the sense of being jarred. He saw Charles lying next to the door and Charles was nude from the waist down. Fairbanks was also nude and was behind Charles, making motions against Charles, bumping him. He did not actually see Fairbanks' penis entering Charles' anus. Dillard and Officer Fondaught had to tell Charles to come out of the station wagon and get him to pull his pants up and to button his shirt.

Officer Fondaught testified that when he walked over to the station wagon he observed that Fairbanks' stomach was against Charles' back. Their clothes were down below their knees, and they were completely nude in the area from the waist down. He did not observe any movement of their bodies.

Fondaught told the men to get out of the station wagon. Fairbanks got out first and Charles second. Fairbanks pulled his clothes up after he got out of the station wagon. He asked the officer what he was going to charge him with; the officer replied sodomy.

At the trial the father, J. W. Crittendon, was sworn to tell the truth and to interpret his son's testimony because the son's speech was unintelligible to the court and to the jury. The trial judge asked counsel for Fairbanks whether he desired to ask questions of the interpreter on cross-examination, but counsel stated that he would rather wait until he finished completely. He never did cross-examine the interpreter.

Charles through his father as interpreter identified Fairbanks and testified that Fairbanks took off his (Charles) pants and made him get in the back seat. When the prosecutor asked what Fairbanks did to him after Fairbanks had pulled off his pants, the father commenced to cry.

The prosecutor then call Dillard and Officer Fondaught who testified as hereinbefore stated. They were each cross-examined by counsel for Fairbanks.

The prosecutor then recalled Charles and asked whether Fairbanks put his penis in his rectum. Charles nodded his head up and down in an affirmative manner, and the interpreter gave his answer as, "Yes."

The father also testified that immediately after it happened his son reported it to him and to his mother. Both questioned him and he explained to them in detail the incident.

The father further testified that the day after Charles was found they took him to Western Baptist Hospital emergency room where they found bruises about his body but no lacerations to the rectum.

Fairbanks took the stand and denied that he committed sodomy with Charles. He did admit that he was in the station wagon and said that Charles got in the station wagon and sat down along beside him while he (Fairbanks) was drinking a can of beer. Fairbanks denied that his pants were down.

It was for the jury to decide whether to believe the testimony of the two disinterested witnesses Dillard and Officer Fondaught, or the incredible story of Fairbanks.

Fairbanks contended in the District Court and before us by counsel for the Public Defenders office that the trial judge abused his discretion when he appointed the father as interpreter; that the father became emotionally involved; that he (Fairbanks) was deprived of the right of confrontation and of due process of law; and that his conviction was fundamentally unfair.

It should be noted that at the trial Fairbanks through his counsel made no objection to the appointment of the father as interpreter. He was given the opportunity to cross-examine the interpreter as to his qualifications, but declined to do so. He made no objection to the testimony of Charles and did not even cross-examine him or his father.

Kentucky law provides for the appointment of an interpreter to assist a witness who has difficulty in communicating. Ky.Rev.Stat. §§ 28.652 and 28.654. The appointment of an interpreter by the trial court is discretionary. *Duroff v. Commonwealth*, 192 Ky. 31, 34, 232 S.W. 47, 49 (1921). The qualifications of an interpreter are determined by the trial judge, and his determination will not be overturned in the absence of an abuse of discretion. *Nioum v. Commonwealth*, 128 Ky. 685, 696, 108 S.W. 945, 948 (1908).

In *Nioum* it was contended that the interpreter mistranslated a crucial matter and was hostile to appellant because he was a friend of the victim. In that case, as in the case at bar, appellant made no objection to the appointment of the friend as interpreter, and the appellate court held that this precluded review.

The trial court in its broad discretion can select a close relative of a witness to serve as an interpreter at the trial. *Renick v. Hays*, 201 Ky. 192, 256 S.W. 26 (1923) (daughter); *United States v. Addonizio*, 451 F.2d 49, 68 (3rd Cir. 1971), *cert. denied*, 405

U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812, *reh. denied*, 405 U.S. 1048, 92 S.Ct. 1309, 31 L.Ed.2d 591 (1972) (wife); and Annot., 172 A.L.R. 941–47 (1948).

Fairbanks relied on *Prince v. Beto*, 426 F.2d 875 (5th Cir. 1970) which we think is inapposite. It involved the selection of a husband to interpret against the wife's rapist. Unlike the present case, the crime was not supported by disinterested eye witnesses who testified at trial.

Fairbanks had full opportunity to confront his accusers who were Officer Fondaught and Noel Dillard and to cross-examine them at length. They were disinterested witnesses to this revolting occurrence and testified to everything except actual penetration which was testified to by Charles and further established by circumstantial evidence. See cases collected in 81 C.J.S. Sodomy § 5 (1961).

The conviction was in conformity with Kentucky law as evidence by the affirmance of its highest court. Habeas corpus is available only for review of violations of the federal constitution. Rulings on the appointment and qualifications of an interpreter do not reach constitutional proportions. Furthermore, in order to preserve an issue for appellate review it is required that objection be made or exception taken at the trial.

As well stated by the Kentucky Court of Appeals in *Nioum v. Commonwealth, supra,* 128 Ky. 694–95, 108 S.W. 948:

> [A] complete answer to the argument [about a friendly and hostile interpreter] is to say that the record also fails to show that an objection was made or exception taken by appellant's counsel as to this matter at the time, nor was it assigned as error in the motion and grounds for a new trial. Consequently this court is prevented . . . from considering it on appeal.

See also *Renick v. Hays, supra* and *Duroff v. Commonwealth, supra.*

Collateral attack may not be resorted to where the defendant had full opportunity to raise and to litigate the issue

in the state court, but neglected to do so and neglected to comply with state court procedure. In taking the testimony of an imbecile the trial court used the best procedures available in a difficult situation.

The District Judge gave careful consideration to all of the issues raised in his memorandum and found no constitutional violation. We agree.

The judgment of the District Court is affirmed.

EDWARDS, Circuit Judge, dissenting.

This appeal is from the denial of a petition for writ of habeas corpus. The District Judge conducted no hearing but apparently had the state court record before him.

The case involves a repulsive set of facts—and in addition offers a difficult appellate problem. Appellant, Fairbanks, was sentenced to two years after being convicted of sodomy in a jury trial before a Kentucky state court.

The alleged victim of the sodomy was Charles Crittendon, who, though 32 years old, is severely retarded as a result of infantile paralysis. The record indicates that he has a mental capacity of a six-year-old and that his voice and responses could not be understood by most people. There was prosecution testimony from a police officer who arrested Fairbanks and from another person near the scene, which constituted complete proof of the crime except as to penetration. This last fact, essential under Kentucky law, was established only by Charles Crittendon's testimony, as interpreted by his father. The appellant, a black vagrant from a Northern state, testified and flatly denied either attempting or committing the crime charged.

The following deficiencies appear in the handling of the crucial testimony of Charles Crittendon. Although the defendant was obviously retarded and said by his father to have the mentality of a six-year-old, no attempt was ever made to qualify him as a witness. Nothing in the record indicates that he was ever asked to swear or affirm that he would tell the truth or questioned about his capacity to do so. It is sometimes difficult to ascertain from the transcript whether the father's reply is his or his son's. Although the father was sworn as a witness, the record does not make clear whether he was also sworn as an interpreter.

Over and above these procedural problems, of course, there is the specific objection made in this appeal which is that the use of the alleged victim's father as his interpreter constituted fundamental unfairness, in violation of the due process clause of the Fourteenth Amendment. Additionally, no effort was made to ascertain whether a less emotionally involved person than the father could be found to interpret who was also capable of understanding the witness.

As noted above, this is an appeal from the dismissal of a petition for a writ of habeas corpus. Appellant relies upon *Prince v. Beto*, 426 F.2d 875 (5th Cir. 1970), as authority for granting the writ. The *Prince* case dealt with a habeas action attacking a state conviction for breaking and entering with intent to commit rape. The husband of a deaf mute, who was alleged to be the prospective victim, was chosen as the interpreter. The Fifth Circuit said:

We are in complete agreement with the district court.

While the choice of a husband to interpret for a wife would normally be, at most, an abuse of the trial court's discretion,[3] Billy Ray's appointment under the facts of the instant case passes "the line of tolerable imperfection and fall[s] into the field of fundamental unfairness."[4] Disregarding the extortion attempt which was unknown to the court, prosecution or defense counsel during Prince's trial, we cannot approve the action of the state trial court in permitting the husband to interpret for his wife in the criminal trial of her alleged assailant. One can imagine few situations in which there would be a greater potential for bias by an interpreter. The trial court's appointment injected an intensely interested party into the center of an emotion-packed criminal trial to interpret the testimony

of the only witness to the alleged offense. This conduct is intolerable. Furthermore, the tremendous potential for bias and prejudice inherent in such an appointment is substantially enhanced by the extortion attempt.

[3] See *Hardin v. United States*, 324 F.2d 553 (5th Cir. 1963); *United States v. Sosa*, 379 F.2d 525 (7th Cir. 1967): *See also, Peoples National Bank of Greenville v. Manos Bros. Inc.*, 226 S.C. 257, 84 S.E.2d 857, 868–869 (1954).

[4] *Curran v. Delaware*, 259 F.2d 707, 713 (3d Cir. 1958). *See In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *Luna v. Beto*, 395 F.2d 35 (5th Cir. 1968). *See also, Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Chessman v. Teets*, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957); *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935).

In defending the state court's appointment, the appellant cites several cases which discuss the qualifications of interpreters. Each of these is factually distinguishable from the instant case. The decision bearing the closest factual resemblance to the present case is *Almon v. State*,[5] where a mother was permitted to serve as interpreter for her tongue-tied daughter, the victim of an alleged rape. The Alabama Court of Appeals held that appointment of the mother did not constitute error because the victim "could not be understood by any one not familiar with her."[6] Thus, the nature of the victim's speech impediment prevented the court from obtaining a wholly disinterested person. The following comments of the court support our decision in the instant case: "Of course, the law contemplates that a fair, impartial, and correct interpretation shall be had, and to this end, a disinterested interpreter should be provided if possible to be secured."[7] It was clearly possible to secure a disinterested interpreter in the instant case. Fundamental fairness requires no less.

[5] 21 Ala.App. 466, 109 So. 371 (1926).

[6] *Id.* 109 So. at 372.

[7] *Id.* 109 So. at 372.

*Prince v. Beto, supra* at 876–77.

Since I agree fully with the holding of the *Prince* case set out above, I respectfully dissent from the majority opinion in our present appeal. Even without proper objections, the facts revealed in the 20-page transcript of the state court trial show repeated omissions of mandatory procedural protections of the fact-finding process which together appear to me to represent such fundamental unfairness as to violate federal due process.

I would reverse for issuance of the writ, absent a new trial under due process standards.