Edward H. TAYLOR, Petitioner,

v.

Stonney LANE, etc., Respondent.

No. CIV–2–77–170.

United States District Court,
E. D. Tennessee,
Northeastern Division.

March 3, 1978.

Edward H. Taylor, pro se.

Robert L. DeLaney, Asst. Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM OPINION AND CERTIFICATE

NEESE, District Judge.

To dispose of the applicant's petition to this Court for the federal writ of habeas

corpus as law and justice require, 28 U.S.C. § 2243, the Court conducted an evidentiary hearing herein on February 16, 1978. See Rule 8,[1] Rules Governing Section 2254 Cases in the United States District Courts. This matter has been under advisement since.

## I

### (The Compulsory-Process Issue)

■ Mr. Taylor contended that the state of Tennessee denied him compulsory process for obtaining witnesses in his favor in violation of the Constitution, Sixth Amendment. The facts do not support this claim.

Four of the witnesses Mr. Taylor desired in retrospect to offer were present at his trial in state court; two others were available momentarily if they were to be called as witnesses. None of these witnesses were offered, because Mr. Taylor's retained counsel concluded that the best course of trial action for Mr. Taylor to follow was to rest upon the weakness of the proof in-chief of the prosecution and not to offer as witnesses for the defense Mr. Taylor and others whose credibility might have been impeached. It being Mr. Taylor's counsel who made this strategic or tactical decision, he has not stated a substantial claim of violation by the state of Tennessee of his right to compulsory witnesses in his favor. *Kanieski v. Gagon*, C.A. 7th (1970), 427 F.2d 401, 403[2].

## II

### (The Opinion-Evidence Issue)

This Court permitted the applicant to introduce evidence on a second issue but denied subsequently his motion to amend his petition so as to include it. The circumstances rendering the corrective process of Tennessee inadequate to protect his rights as a prisoner did not extend to this issue.

A crucial issue bearing upon the issue of Mr. Taylor's guilt or innocence was whether 567 pounds of scrap copper wire (the recovered copper) the evidence reflected he had sold on March 20, 1974 to a metals dealer was one and the same scrap copper wire stolen (the stolen copper) from an electric cooperative on the night of March 19–20, 1974. It is asserted by Mr. Taylor that the prosecution had offered no proof that these two quantities of wire were the same until the trial judge declared Mr. James S. Blankenbecker, a witness for the prosecution, an "expert" in identifying whether copper wires are the same or different; and that, when Mr. Blankenbecker gave his opinion that the wire he (Mr. Taylor) sold was the same as that stolen from the cooperative, this resulted in a jury finding of his guilt " * * * just automatically. * * *" However, the record contradicts Mr. Taylor's initial assertion; Mr. Blankenbecker testified, in parts:

\* \* \* \* \* \*

(Cross-examination)

Q. But, you're not stating here that the Mountain Electric Cooperative is the only cooperative, or the only electric system, in East Tennessee that uses number 6 electric wire with a Fargo sleeve are you?

A. I'm saying that *this is the wire that* Mountain Electric took down from poles, was put out, was burnt and *was taken on the morning of the 19th of March.* [Emphases supplied.]

\* \* \* \* \* \*

Q. Okay. Now, Mr. Blankenbecker, what you are saying to this jury and the judge is that the wire that you had on hand at the Mountain Electric Cooperative is similar to the wire that you have there, is that true?

A. Yes.

Q. Is there any mark on that wire or on that sleeve that would indicate that it would belong to Mountain Electric

---

1. As the Court was in the process at the time of changing its only full-time magistrate, the Court conducted such hearing personally. Because of the nature of the issues extant, counsel was not appointed for the applicant. At the conclusion of his testimony, Mr. Taylor stated that he did not deem himself handicapped or hampered in any way in presenting his claims because he had not received the assistance of counsel on the hearing.

Cooperative or to any other individual that you know anything about?

A. Not that part, but this—*this is the wire that we took down*, that was burnt. [Emphases supplied.]

\* \* \* \* \* \*

Q. And your testimony is that that is similar to the wire that was on hand on March the 19th, 1974 when you left there?

A. Yes.

\* \* \* \* \* \*

Mr. Wilson: Your Honor, I object to that, as to his personal opinion. That would be speculation.

\* \* \* \* \* \*

The Court: The Court \* \* \* declares him as an expert witness, and his opinion is admissible.

\* \* \* \* \* \*

Q. Do you have an opinion as to the identification of that wire, who it belongs to?

A. It's Mountain Electric Coop's wire.

\* \* \* \* \* \*

Thus, it is evident that this witness had testified already that the stolen copper and the recovered copper were the same before he was declared an "expert."

 This federal court does not sit as a court of appeals to review matters, such as the foregoing, which are within the jurisdiction of the state of Tennessee. *Worth v. People of State of Michigan*, C.A. 6th (1961), 291 F.2d 621, 622[1], certiorari denied (1961), 368 U.S. 862, 82 S.Ct. 105, 7 L.Ed.2d 59. " \* \* \* Habeas corpus is available [to Mr. Taylor] only for review of violations of the federal constitution. \* \* \* " *Fairbanks v. Cowan*, C.A. 6th (1977), 551 F.2d 97, 99[4]. Mr. Taylor has had full opportunity to raise and litigate the matter of any errors of law occurring in his trial in the courts of Tennessee, and this Court is not authorized to review those decisions. *Wooten v. Bomar*, C.A. 6th (1959), 267 F.2d 900, 901[2].

The admissibility by the state trial judge of the evidence provided by the opinion of Mr. Blankenbecker does not raise any federal constitutional question unless it has resulted in a violation of Mr. Taylor's right to a fair trial. *Maglaya v. Buckhoe*, C.A.6th (1975), 515 F.2d 265, 268[3], certiorari denied (1975), 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260. This Court would FIND from the facts that it did not so result in this instance.

" \* \* \* [A] constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten \* \* \* that the proceeding is more a spectacle \* \* \* than a disciplined contest. \* \* \* " *United States v. Augenblick* (1969), 393 U.S. 348, 356, 89 S.Ct. 528, 534, 21 L.Ed.2d 537, 545[14].

### III

#### (The Evidence-Suppression Issue)

Mr. Taylor sought to amend his application in this Court so as to claim also inferentially that he was denied federal due process of law by the suppression by the prosecution in his state trial of relevant evidence favorable to his theory of defense. *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215, 218 (headnote 3). Again, circumstances extant, rendering the corrective process of the Tennessee courts ineffective to protect his rights as a prisoner, did not extend to this issue, and the proposed amendment was disallowed subsequently. However, this issue merits discussion by this Court and, upon proper presentation to them, consideration by the courts of Tennessee.

There was evidence before the Court, as well as in the record of the state trial of Mr. Taylor, that evidence he sought to discover under the applicable Tennessee statute, T.C.A. § 40–2044, *infra*, had been "lost" before his trial, in the sense that the scrap copper which the evidence showed Mr. Taylor had sold to the metals dealer (and which had been recovered afterward) had been smelted-down and was no longer available to him in its former form. There was evidence also of the effort of the attorney for the state of Tennessee therein to preserve

in identifiable form the scrap copper involved. The loss of evidence allegedly involved directly in the commission of an offense, *cf.* anno: Discovery—Prosecution's Evidence, 7 A.L.R. (3d) 163–172, § 25, involves an issue of federal due process and brings into play extraordinary rules.

■ There has been no suggestion whatever that the attorney for the state of Tennessee "suppressed" evidence of the recovered copper wire except unintentionally, but the good-faith actions of a prosecuting authority, in suppressing evidence exculpatory of an accused person, is not a factor to be considered. *Brady v. Maryland, supra,* 373 U.S. at 87, 83 S.Ct. at 1196, 10 L.Ed.2d at 218 (headnote 3).

" * * * If the suppression of evidence results in [federal] constitutional error, it is because of the character of the evidence, not the character of the prosecutor. * * * " *United States v. Agurs* (1976), 427 U.S. 97, 110, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342, 353[7]. As Mr. Justice Stevens explained:

* * * * * *

* * * [I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. [Footnote reference omitted.] If there is no reasonable doubt of guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. * * *

*Ibid.,* 427 U.S. at 112–113, 96 S.Ct. at 2402, 49 L.Ed.2d at 355[15].

Mr. Taylor was accused of the grand larceny of the stolen copper on the evening of March 19–20, 1974. There was evidence that Mr. Taylor sold a similar quantity of the copper on March 20, 1974. As related in

the discussion of II, *supra,* there was evidence admitted at Mr. Taylor's trial that the recovered copper was "the" stolen copper.

It is Mr. Taylor's contention that, if the recovered copper had not been suppressed by the prosecution, he could have shown at his trial upon its production that there were differences in sizes and end-connectors (sleeves) between the stolen copper and the recovered copper. Whether he could have done so, of course, must now always remain an "iffy" question. But, as he was denied his opportunity to make such a showing, other factors are activated.

■ Where the evidence allegedly suppressed was lost, the prosecuting authority had the burden of demonstrating its routine in handling and preserving discoverable evidence and " * * * explaining * * * " why it could not produce the lost evidence upon a criminal defendant's demand for it. *United States v. Augenblick, supra,* 393 U.S. at 355–356, 89 S.Ct. at 533, 21 L.Ed.2d at 545[10]. This " * * * exception for good faith loss of important evidence must not be allowed to swallow the discovery rules, and the burden of explanation on the [prosecuting authority] must be a heavy one. * * * " *United States v. Bryant,* C.A.D.C. (1971), 142 U.S.App.D.C. 132, 141, 439 F.2d 642, 651[12], cited and quoted from in *Armstrong v. Collier,* C.A.5th (1976), 536 F.2d 72, 78[5]. The prosecuting attorney must have made " * * * earnest efforts * * * " to preserve the evidence discoverable by the accused person. *Ibid.,* 536 F.2d at 79[5].

There appears no doubt that the recovered copper in this instance was discoverable under Tennessee law. T.C.A. § 40–2044.[2] The Tennessee appellate courts interpreted this statute as requiring a " * * * reasonable and timely * * * " inspection, and found Mr. Taylor's request for the wire during his trial " * * * not timely and * * * therefore unreasonable under the circumstances. * * * "

2. " * * * Upon motion of a defendant * *, at any time after the finding of an indictment or presentment, the court shall order the attorney for the state to * * * permit the attorney for the defendant to inspect * * * designat-

ed * * * tangible objects * * * obtained from others which are * * * under the control of the attorney for the state. * * * " T.C.A. § 40–2044.

*Edward H. Taylor*, plaintiff-in-error, *v. State of Tennessee,* defendant-in-error, no. 548 in the Court of Criminal Appeals of Tennessee, opinion of September 9, 1975, certiorari denied per curiam on November 3, 1975.

The courts of Tennessee were not presented fairly with, and did not therefore reach, the federal constitutional issue of whether the unintentional loss of this evidence by the attorney for the state of Tennessee constituted "suppression" of evidence by the prosecution which might have exculpated Mr. Taylor. He presented all the facts pertaining to this issue to the state courts, but he did so in the context that the judge in the state court trial should have directed a verdict for Mr. Taylor when the prosecuting attorney was unable to produce the discoverable evidence involved in his alleged crime. " * * * [The] elected judges of our state courts are fully competent to decide federal constitutional issues, * * * " *Swain v. Pressley* (1977), 430 U.S. 372, 383, 97 S.Ct. 1224, 1231, 51 L.Ed.2d 411, 421[9], citing 28 U.S.C. §§ 2254(d)(2), (3), but a state court cannot be expected to rule on a federal constitutional issue unless its attention is invited to it in the most specific terms.

■■■ Mr. Taylor must exhaust available state judicial remedies regarding this federal issue before a federal court will entertain it. 28 U.S.C. § 2254(b), (c). The federal system is designed so as to give the state the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Wilwording v. Swenson* (1971), 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418, 420–421[1]. Exhaustion of state remedies is required as to each of the claims sought to be presented in a federal habeas corpus proceeding. *Pitchess v. Davis* (1975), 421 U.S. 482, 487, 95 S.Ct. 1748, 1751, 44 L.Ed.2d 317, 322[1].

" * * * [T]he federal claim must be fairly presented to the state courts. If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,' * * * it is not sufficient merely that the federal habeas applicant has been through the state courts. The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly * * * " a state prisoner is required to present the state courts with the same claim he urges upon the federal courts. *Picard v. Connor* (1971), 404 U.S. 270, 275–276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438, 443–444[3].

The petitioner Mr. Edward H. Taylor hereby is DENIED all relief, Rule 58(1), Federal Rules of Civil Procedure, his application for federal due process relief being denied only because of his failure to exhaust available state remedies. Should the petitioner give timely notice of an appeal from the judgment to be entered herein, he is authorized to proceed on any such appeal in forma pauperis. Rule 24(a), Federal Rules of Appellate Procedure. Any such notice will be treated also as an application for a certificate of probable cause, Rule 22(b), Federal Rules of Appellate Procedure, which will ISSUE.