14265

GREER v. EQUITABLE LIFE ASSUR. SOCIETY OF UNITED STATES

(185 S. E., 68)

May,
1935.

164

*Messrs. Osborne & Butler,* for appellant,

*Messrs. L. G. Southard* and *Johnson & Johnson,* for respondent,

March 31, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

For several years prior to March, 1930, Spartan Mills carried with appellant, group insurance for its employees or those desiring to participate; the policy providing among other things for the payment of certain benefits should the participating employee become totally and permanently disabled. The total and permanent disability of respondent is not questioned by this appeal. Prior to March 30, 1929, it is admitted that respondent, an employee, was insured, and that, had his disability occurred prior to said March 30, 1929, he would be entitled to recover, provided he filed with appellant proof of disability within one year from the commencement of his disability.

There are thirty exceptions, two of which have been abandoned, but we will first consider the two major questions: (1) Was the policy in force at the time respondent's disability occurred on or about March 10, 1930? and (2) did appellant waive the failure to furnish proof of disability within the required time?

The contention of the appellant is that the group policy, insofar as it insured respondent, had been terminated and cancelled on March 30, 1929, for non-payment of premiums, and it is uncontradicted that appellant had not received premiums after that date to cover the certificate of respondent, and had been instructed by Spartan Mills to terminate and cancel the insurance of respondent.

The master policy contained the following provisions as to the payment of premiums:

"Payment.—All premiums are payable in advance at the home office of the Society, or to any agent or cashier of the Society, upon delivery on or before their due date of a receipt signed by the president, a vice-president, secretary or treasurer, and countersigned by said agent or cashier.

"All premiums under this policy shall be payable to the Society by the employer."

The application attached to and forming a part of the policy contained the following provision: *"The cost of this*

*insurance is to be borne jointly by the employer and the employees participating in this insurance.* The contribution from any employee for the insurance carried on such employee's life shall not be at a higher rate than 60c per month per $1,000.00 of such insurance." (Italics added.)

It would be unnecessary to further discuss the matter, except for the provision in italics just above quoted and the provision in the policy for termination immediately following: "Terminations.—*The insurance under this policy upon the life of any employee shall automatically cease upon his discontinuance of participation as evidenced in writing signed by him and filed with the Society,* or upon termination of his employment with the employer in the classes of employees insured hereunder without regard to the cause of such termination, except that the employer may elect that all employees who while insured hereunder or temporarily laid off or given leave of absence or are disabled or retired on pension, shall be considered to be in the employment of the employer during such period, subject to the conditions contained in the total and permanent disability provisions hereof and subject, in case of military or naval service, to the provisions on the second page hereof." (Italics added.)

Without a specific provision to that effect and regardless of other provisions of a policy of insurance with reference to the termination thereof, it cannot be disputed that, for a policy to remain in force, it is necessary that the premiums therefor be paid; and it is unnecessary to cite authority to sustain the position of appellant that, where the employer enters into a contract of insurance for the benefit of its employees and pays the premiums, such employer is not the agent of the insurance company, even though a portion of the premium is deducted from the wages of the employee. But an insurance company can make the employer its agent for certain things in connection with the policy. In the instant case the contract is different from the contracts in the other cases heretofore de-

cided by this Court, in that it provides that the premiums are payable to the appellant by the employer (Spartan Mills), but that the cost of the insurance be borne jointly by the employer and the employee, limiting the amount to be paid by the employee to 60 cents per month per $1,000.00. There being no dispute as to these facts, it follows as a matter of law that appellant thereby constituted Spartan Mills its agent to collect and remit the portion of the cost of the insurance to be borne by respondent.

It is not claimed that respondent filed anything in writing with the appellant signifying his intention to cease participating under the policy. No notice was ever given respondent by appellant that his policy had been terminated.

The testimony on behalf of appellant was to the effect that, on verbal instructions from respondent to Spartan Mills, his insurance was cancelled, that no further premiums were collected from respondent, and of course no further premiums remitted appellant after the date of the cancellation in March, 1929. The respondent denied ever having given instructions to cancel the policy of insurance in controversy, and testified that he had continued to pay his portion of the premiums thereon until the termination of his employment on or about March 30, 1930. Respondent could not be arbitrarily deprived of the benefits of his insurance, and, under the provisions of the policy and the above testimony at the trial, it was a question for the jury whether respondent had waived his right to have the policy terminated in a different manner than provided therein and whether he had paid the premiums to keep it in force, and therefore if the policy was in force until March, 1930.

The exception relating to the refusal of the trial Judge to grant appellant's motion for nonsuit and motion for directed verdict on the ground that all of the testimony showed that the policy had been terminated prior to the commencement of respondent's alleged disability is overruled.

The policy of insurance carried this provision: "In the event that any employee while insured under the aforesaid policy and before attaining age 60 becomes totally and permaently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value, upon receipt of due proof of such disability before the expiration of one year from the date of its commencement, the Society will, in termination of all insurance of such employee under the policy, pay equal monthly disability-installments, the number and amount of which shall be determined by the Table of Installments below. * * * "

The envelope container of the certificate furnished respondent by appellant had the following instructions printed thereon: "It is not necessary to employ any Person, Firm or Corporation, to collect the Insurance or secure any benefit under this Certificate. Write direct to the Employer or to The Equitable Life Assurance Society, 393 Seventh Avenue, New York."

Respondent was discharged from Spartan Mills on or about March 30, 1930. It is alleged his disability commenced on March 10, 1930. There is testimony to the effect that within a few days after his discharge respondent went to Spartan Mills, the employer, and demanded his insurance, and told them, "I had been to the doctor and he had said I would not be able to work"; that he went to them three times, and he was refused each time. In asking for his insurance, respondent testified that he talked to Mr. Holcombe, Mr. Thomas, and Mr. Matthews, office employees of Spartan Mills. Mr. Holcombe was paymaster at Spartan Mills, the pay rolls were made up under his supervision, and an employee carrying insurance under the group policy had his proportion of the premium deducted from his pay. Mr. Thomas worked in the office of Spartan Mills as a shipping clerk, and kept the record showing which employees were in-

sured under the group policy. Mr. Thomas was the one who delivered the certificate to respondent, and was the one who notified the appellant to terminate the insurance of respondent. The record also discloses that Mr. Thomas was the agent of Spartan Mills who handled claims arising against appellant under its group policies. Spartan Mills had blanks, which were furnished by appellant, on which claims were to be made, and no demand was made on respondent to file his claim on such blank form, nor was a blank furnished him.

Under the testimony and instructions on the envelope in which respondent's certificate was delivered to him, it was a question for the jury if Spartan Mills was the agent of appellant to handle claims arising under the policy, and it was also a question for the jury if, under the circumstances, the filing of proof of disability in writing was waived.

We now take up the exceptions relating to rulings of the trial Judge as to the admissibility of testimony. Exceptions 7, 8, 9, 11, 12, 13, and 14 complain of error on the part of the trial Judge in the exclusion of testimony offered on the part of appellant.

Exception 7. We do not understand that the witness was undertaking to testify as a matter of law that the policy had been terminated, but as to a matter of fact within his knowledge, and this testimony was competent, and the jury should have had the advantage of it.

Exception 8. This exception is overruled. The policy was the best evidence.

Exception 9. This exception is sustained. Appellant, under the circumstances of this case, was entitled to have the jury consider all competent evidence of any probative value, and the probative value of the testimony excluded cannot be questioned.

Exceptions 11, 12, and 13. The testimony was offered for the purpose of explaining the sums deducted from the pay envelope of respondent, and, being a

collateral matter, it was not necessary to show a loss of the policy in order to admit of secondary evidence. The record discloses that considerable question had been made of the fact that during some months as much as $1.80 had been deducted from respondent's pay, and appellant was entitled to put in evidence any and all facts in explanation of the deductions in excess of 60 cents per week.

Exception 14. This exception is sustained. The testimony excluded was corroborative of the testimony which had been admitted that no amounts had been deducted from respondent's pay subsequent to March, 1929, and had probative value. The witness was not undertaking to testify as to records, but as to a fact within his knowledge. The exception as it appears in the record refers to March, 1930, but it is so palpably apparent that it was intended as March, 1929, that we have so treated it.

Exception 10. This testimony was totally irrelevant, could tend only to mislead and confuse the jury, and was therefore inadmissible.

The relevancy and admission of testimony is within the discretion of the trial Judge, and his rulings will not be disturbed unless it clearly appears to have been harmful to appellant, but it so clearly appears that harm has been done appellant in this case both in the admission and exclusion of testimony, we are compelled to order a new trial.

In passing upon the various exceptions to the admissibility and exclusion of testimony, it would serve no purpose to go into same in detail. Let Exceptions 7, 8, 9, 11, 12, 13, 14 and 10 be reported.

It is unnecessary to consider the exceptions relating to the charge of the trial Judge.

Reversed, and remanded for a new trial.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER (dissenting) : In my opinion, the defendant was not prejudiced by the ruling of the trial Judge

in the admission of testimony, and I think the judgment of the lower Court should be affirmed.