16931

**THE PEOPLES NATIONAL BANK OF GREENVILLE v. MANOS BROTHERS, INC. et al., of whom Eugenia A. K. Manos is Appellant, and Marigo Manos and George Stavrakos Manos are Respondents**

(84 S. E. (2d) 857)

258

*Messrs. Wyche, Burgess & Wyche,* of Greenville, *for Appellant,*

*J. Robert Martin, Sr., Esq.,* of Greenville, *for Respondents,*

November 17, 1954.

LEGGE, Justice.

On June 8, 1922, Manos Brothers, Inc., a corporation, executed and delivered to J. K. Manos and A. K. Manos its promissory note for $30,000.00, payable one day after date, with interest from date at the rate of seven per cent per annum, to be computed annually, and a mortgage securing the same, covering certain real estate in the City of Greenville, South Carolina. In 1925 the corporation dissolved; and in 1936 the said J. K. Manos and A. K. Manos, as sole stockholders, officers, directors and liquidating trustees of the said

corporation, conveyed the said real estate to themselves individually in equal shares. On November 22, 1939, J. K. Manos and A. K. Manos executed and delivered to the plaintiff their promissory note in the amount of $10,000.00, and assigned as collateral thereto the note and mortgage before mentioned. A. K. Manos died on January 1, 1940, leaving a will dated October 24, 1938, which was thereafter duly admitted to probate in Greenville County, E. M. Blythe qualifying as executor. On March 12, 1942, plaintiff commenced this action for judgment on the $10,000.00 note, and for foreclosure and sale of the property covered by the collateral mortgage. Among others, there were made parties defendant Marigo Manos, the first wife of A. K. Manos, deceased, George Stavrakos Manos, a son born to Marigo in wedlock with A. K. Manos, but whose legitimacy was impugned by his will, Eugenia A. K. Manos, the second wife of A. K. Manos, and all other persons unknown claiming any right, title, estate or interest in or lien upon the real estate described in the complaint. The prayer of the complaint was: (a) for judgment against the defendants J. K. Manos and E. M. Blythe, as executor and trustee under the will of A. K. Manos, in the sum of $10,000.00, with interest and attorney's fee in accordance with the provisions of the note; (b) for judgment against the premises described in the collateral mortgage, in the amount of the note secured by said mortgage, with interest and attorney's fee as provided in that note and mortgage; (c) for the foreclosure and sale of the mortgaged premises, and the application of the proceeds thereof to the payment of the amount due on the $10,000.00 note, with interest and attorney's fee as provided in the note and mortgage; (d) "that the balance of the proceeds derived from the sale of the real estate referred to in the complaint, if any, after payment of plaintiff's judgment in the sum of ten thousand ($10,000.00) dollars, with interest and attorney's fees as hereinabove set forth be paid over to the defendants as their respective rights and priorities may appear"; and (e) "for such other and further relief as to the court may seem just and proper."

Marigo Manos answered, admitting the death of A. K. Manos and his ownership of an interest in the property in question, and alleged that she was the lawful surviving wife of the said A. K. Manos and therefore entitled to a dower right in A. K. Manos' interest in said property or in the proceeds to be derived from its sale.

George Stavrakos Manos answered by guardian *ad litem*, requiring strict proof of the allegations of the complaint and submitting his rights to the protection of the court.

Eugenia Manos answered, denying that either Marigo Manos or George Stavrakos Manos had any interest in the premises, and alleged that she was the lawful surviving wife of A. K. Manos, that she had a life interest in the said property under his will, and that as to the remainder he had died intestate, leaving as his heirs herself as his wife, and his mother, Panagioti Maniates, one sister, Georgia Maniates Xanthakos, and one brother, J. K. Manos. She joined in the prayer of the complaint, and prayed further:

"1. That the undivided one-half interest owned by A. K. Manos in .said property at the time of his death (subject to plaintiff's mortgage) be declared to be as follows:

"A. That E. M. Blythe, as executor and trustee, be declared to be the owner of an undivided one-half interest in the property described in the complaint (subject to plaintiff's mortgage) in trust for and during the life time of this defendant, Eugenia A. K. Manos, with this defendant as beneficiary of said trust, said one-half interest having been owned by A. K. Manos at the time of his death.

"B. That this defendant be declared to own an undivided one-fourth interest in remainder in said property after falling in of the life estate hereinabove referred to; that the defendants, J. K. Manos, and Panagioti Maniates and Georgia Maniates Xanthakos, be declared to be the owners of an undivided one-twelfth interest each in remainder in said property after falling in of the life estate hereinafter referred to.

"2. For such other and further relief as to the Court may seem meet and proper."

George Stavrakos Manos filed a cross-answer to the answer of Eugenia Manos, alleging that A. K. Manos had died intestate as to his interest in the property after the expiration of the lawful interest of Eugenia Manos therein, that he was the lawful heir of A. K. Manos and the sole and exclusive owner of the remainder in said property by reason of the fact that his mother, Marigo Manos, had elected to claim dower in the estate of A. K. Manos, and that the life estate given to Eugenia Manos in the property in question, together with other properties of A. K. Manos situate in South Carolina, was invalid so far as its value exceeded one-fourth of the net value of the estate of A. K. Manos in South Carolina.

His answer concluded with the prayer:

"1. That he be declared to be the sole owner of the interest of A. K. Manos in the property herein concerned remaining after expiration of the law provision made for the defendant Eugenia A. K. Manos. .

"2. That the life estate given the defendant Eugenia A. K. Manos in the interest of A. K. Manos in the property herein concerned, together with other properties, having a *situs* in the State of South Carolina, be declared null and void so far as the value of same exceeds one-fourth of the net value of the estate of A. K. Manos having a *situs* in the State of South Carolina.

"3. That the interest of A. K. Manos in the proceeds of sale from the property herein concerned, after payment of liens and the dower right of his mother Marigo Manos, be turned over to E. M. Blythe, as executor of the will of A. K. Manos, for the purposes hereinabove indicated."

By consent order dated May 28, 1942, the cause was referred to the Master for Greenville County to take testimony and hear and determine all issues of law and fact, with leave to report any special matters.

An offer having been made to purchase the mortgaged property at private sale for an amount in excess of the plaintiff's claim, by consent order dated June 20, 1942, the private sale was approved and the interest of the estate of A. K. Manos in the excess proceeds was ordered to be paid to Col. E. M. Blythe, as executor and trustee under the will of A. K. Manos, to "be held by him pending the final determination as to who is entitled as devisees, legatees, or heirs at law of the estate of A. K. Manos, deceased, to said portion of his estate." Col. Blythe died in 1945 without having completed the administration of the estate, and his son, E. M. Blythe, was duly appointed administrator, d.b.n.c.t.a.

Presumably because of a protracted contest over a large claim filed in the Probate Court against the estate of A. K. Manos, which, if allowed, would have practically absorbed the entire estate, and which was finally decided adversely to the claimant in 1950, no further proceedings were had in the instant case until July 3, 1951, when the first reference was held before the Master. Another reference was held on December 21, 1951, another on January 15, 1952, and finally one on January 6, 1953. On July 15, 1953, the Master filed his report, holding that the court had jurisdiction in this proceeding to determine (1) whether or not George Stavrakos Manos was the lawful son of A. K. Manos; (2) whether Eugenia Manos or Marigo Manos was the lawful surviving wife of A. K. Manos; (3) to fix their respective rights in the estate of A. K. Manos in all real estate in South Carolina owned by him at the time of his death, including the property mentioned in the complaint; and (4) to construe the will of A. K. Manos so as to fix the rights and interests of the said three parties in his estate, whether by will or descent and distribution; and he found that George Stavrakos Manos was the lawful son, and Eugenia Manos the lawful surviving wife, of the said A. K. Manos. The holding in favor of the second wife was based upon a Georgia divorce obtained by A. K. Manos on October 22, 1923, purporting to dissolve his marriage with Marigo Manos.

Exceptions to the Master's report were filed by Marigo Manos and George Stavrakos Manos, and also by Eugenia Manos, and they were heard before the Honorable Steve C. Griffith, Judge of the Eighth Judicial Circuit, at Newberry, the Honorable J. Robert Martin, Jr., Judge of the Thirteenth Judicial Circuit, having filed an order disqualifying himself. By his order dated September 24, 1953, Judge Griffith sustained the report of the Master on the jurisdictional issues, but reversed his finding in favor of Eugenia Manos, and held that Marigo Manos was the lawful surviving wife of A. K. Manos. From this order Eugenia Manos has appealed on twenty-eight exceptions, raising numerous issues which will be hereinafter discussed.

The portions of the will of A. K. Manos pertinent to the issues with which we are here concerned are as follows:

"I, Alexander K. Manos, alias Alexandros K. Maniates, born at village of the Commune of Faris Province of Lacedemonia, Greece, now a naturalized citizen of the United States of America, and a resident of more than thirty-five years of the City of Greenville, State of South Carolina, U. S. A., desiring to dispose of all my property, both real and personal, wherever located, whether in America or in any country in Europe, of whatever description and kind, do make and declare this my last will and testament, which said will and testament is written, dated, and signed by me in my own handwriting. * * *

"Item 2. The son of my former wife, Marigo, nee George Stavrakos, whose name is George and who is considered my son because he was born before my marriage with said Marigo had been dissolved, whom, however, I do not recognize as my own true son, to him I bequeath and devise one thousand drachmas in Greek money to be paid to him after my death either by my said brother, John K. Manos, alias Ioannis K. Maniates, or by the executors of this will. * * *

"Item 5. To my brother, John K. Manos, alias Ioannis K. Maniates, of the village Arhassa of the Commune of Faris,

Province of Lacedemonia, Greece, now residing in Greenville, South Carolina, I give, bequeath and devise a life estate in all my real and personal property situate in the country of Greece to enjoy the rents, profits and income therefrom during his lifetime and after his death in fee simple to the Community of Xerokambion, Prefecture of Sparta, Province of Lacedemonia, Greece, and I direct the Community Council of said Community of Xerokambion to sell such real and personal estate and use the proceeds as trust funds to be utilized for endowing poor girls, natives of the said Community of Xerokambion, about to be married, with a dower to be determined in each particular case by the Community Council of said Community of Xerokambion.
* * *

"Item 8. My said executors and trustees shall collect all and any income from all my real and personal estate and business enterprises and from all other sources in both the United States of America and in Germany and shall collect all monies and debts due me in this country or in Germany and shall deposit all of same with the Peoples National Bank of Greenville, S. C., U. S. A.

"Item 9. All income from my real and personal estate, both in this country and in Germany, and all monies as stated in the preceding paragraph shall be invested by my said executors and trustees as they see fit for the use of my wife, Eugenia A. K. Manos during her lifetime as hereinafter stated.

"Item 10. My wife, Eugenia A. K. Manos, whom I married on April 24, 1925, shall receive, have, and enjoy all income from my real and personal estate in the United States and in Germany during her lifetime.

"Item 11. In case such income to be paid to my wife does not reach the amount of one hundred ($100.00) dollars per month, my said executors and trustees shall pay her an amount sufficient to complete the said amount of $100.00 per month out of the capital of my estate of any kind whatsoever.

"Item 12. In case my said wife, Eugenia, shall become ill, my said executors and trustees shall upon due attestation of a physician allow her from my estate any amount that will be judged by them necessary for an adequate treatment and full recovery.

"Item 13. In case my said wife, Eugenia, shall remarry after my death or perchance transgress any of the rules of good morals the said executors and trustees shall have the right to discontinue making any payments to her and shall then sell out all my real and personal property and remit the proceeds thereof to the Community of Xerokambion, Sparta, Greece, as herein provided in paragraph five."

Appellant contends (Exception XXVII) that Judge Griffith erred in holding that he had jurisdiction to hear and pass upon the exceptions to the Master's report, the basis of this contention being that at the time and place of the hearing the necessity for the exercise of jurisdiction by him had not been shown by affidavit of the moving party, as required by Section 15-235 of the 1952 Code. Judge Martin's order disqualifying himself was issued on July 27, 1953, and on the same day counsel for Marigo Manos and George Stavrakos Manos served upon counsel for Eugenia Manos notice that he would move before the Honorable Steve C. Griffith, Judge of the adjoining Eighth Circuit, to hear and dispose of the exceptions to the Master's report on August 3, 1953, at Newberry, S. C. The notice recited that Judge Martin had disqualified himself, and a copy of Judge Martin's order was delivered to opposing counsel with a copy of the notice. On the date mentioned, Judge Griffith heard oral arguments and thereupon requested written briefs, which were filed with him on August 24, 1953. Thereafter, he discovered that although there had been attached to the notice Judge Martin's order disqualifying himself, there was lacking the affidavit required by Section 15-235 of the Code. Judge Griffith thereupon wrote to counsel for respondents on September 9, 1953, calling attention to the fact that the required affidavit had not been filed; and he sent a copy of

that letter to counsel for appellant. The letter reads in part as follows:

"In making a detailed study of the record, I have discovered that you did not file an affidavit in compliance with Section 15-235 of the Code. You did file with the motion an order of Judge Martin disqualifying himself, but you should show by affidavit that there was no other judge, special or regular, presiding therein at the time of the giving of the notice and the date of the hearing. You so stated at the hearing, and I assumed that the affidavit had been filed, but it can be filed now. There has been no question raised about the matter but I prefer that the record show compliance with the Code."

Upon the matter having been thus called to his attention, counsel for respondents on September 10, 1953, made the required affidavit, reciting his inadvertent failure to file such an affidavit with the notice, and setting forth that he knew of his own knowledge that at the time of the disqualification of the resident judge and at the time of the notice and also on the date of the hearing before Judge Griffith there was no other judge, special or regular, presiding in the Thirteenth Circuit. This affidavit was thereupon filed with Judge Griffith, and a copy sent to counsel for appellant. Although two weeks thereafter elapsed before Judge Griffith issued his decree, appellant did not question the sufficiency of the affidavit or the propriety of the procedure until after the adverse decision had been rendered.

Section 15-235 of the 1952 Code reads as follows:

"In case any judicial circuit is without a resident judge, by reason of death, absence, disqualification or otherwise, and no other judge, special or regular, is presiding therein, then jurisdiction in all matters arising in such circuit is conferred upon and shall be exercised by the resident judge of any adjoining circuit or by any judge presiding therein. Any judge exercising such jurisdiction shall first satisfy himself of the necessity of doing so by affidavit of the moving party."

Appellant urges that the filing of the affidavit before or at the time of the hearing, *i. e.,* August 3, 1953, was essential to confer jurisdiction upon Judge Griffith; that because of the absence of the affidavit at that time he had no jurisdiction; and that the subsequent filing of the affidavit could not cure the jurisdictional defect. The fallacy of this contention lies in its premise that jurisdiction is conferred by the affidavit. Such is not the purport of the statute. Jurisdiction is conferred by the fact that there is no resident or presiding judge in the circuit in which the cause is pending; the purpose of the affidavit is to satisfy the judge of the adjoining circuit of that fact and the consequent necessity that he exercise jurisdiction.

In the case at bar, the existence of the jurisdictional fact has never been questioned. It was stated by respondents' counsel at the hearing before Judge Griffith on August 3, 1953, and at that time appellant made no objection to the jurisdiction based on the absence of the statutory affidavit. Nor did she question the sufficiency or the timeliness of the affidavit when it was later filed at Judge Griffith's request. She is estopped to question it now, *Cf. Truesdell v. Johnson,* 144 S. C. 188, 142 S. E. 343. Moreover, the affidavit being not the creator of the jurisdiction, but merely the evidence of its existence as required by the statute, it was within the power of the trial judge to permit its filing *nunc pro tunc.* The facts here distinguish the instant case from that of *In re Bowen,* 186 S. C. 125, 195 S. E. 253, upon which appellant relies. In that case timely objection to the jurisdiction, based upon the absence of the statutory affidavit, was made at the time of the hearing, but no affidavit was filed then "or at any other time" showing that the resident judge of the circuit in which the cause arose was out of the circuit either when the rule to show cause was issued or when the hearing on the rule was held. Exception XXVII is overruled.

Appellant contends also (Exception I) that the trial court was without jurisdiction to pass upon the issues set forth in the decree of September 24, 1953, for

the reason that the consent order of June 20, 1942, approving the private sale of the mortgaged property and directing that the share of the estate of A. K. Manos in the excess proceeds be paid to the executor and held by him pending final determination as to who was entitled, as devisees, legatees or heirs at law to said portion of his estate, ended the case and relegated the parties to their respective rights in the Probate Court or in a proper proceeding in the Court of Common Pleas or the County Court for Greenville County. This contention is without merit. It is apparent from the pleadings that all parties contemplated the adjudication in this action of the right of the defendants in the surplus proceeds of the sale of the mortgaged property. There was no suggestion in the consent order of June 20, 1942, that such adjudication be made elsewhere than in the pending suit. Appellant argues that the court below was without jurisdiction to determine the issues here involved for the further reason that all the necessary parties were not properly before the court, in that if George Stavrakos Manos is not the decedent's son, then decedent's mother and brother and sister are entitled as heirs to inherit that portion of his estate as to which he died intestate, and they have not been fairly put on notice of their rights in the entire estate and the court cannot pass on their rights in their absence. This contention is not embodied in any of appellant's exceptions, and is therefore not entitled to consideration. Furthermore, the objection of *non-joinder* was not made in the lower court, and is not available when made for the first time here. 39 Am. Jur., Parties, Par. 117. Exception I is overruled.

A. K. Manos, or Maniates, and Marigo Stavrakos were married in Greece in 1904. In 1905 they came to Greenville, South Carolina, where they resided for more than seven years. In 1913 they returned to Greece, and they remained there until 1915, when A. K. Manos came back to Greenville alone, leaving his wife at the home of his parents near Sparta, Greece. In September, 1919, he made another trip to Greece where he lived with his wife until the latter part

of February, 1920, when he left her, she being then some five months pregnant, and she lived thereafter at the home of her parents, near Sparta. Four months later she gave birth to her son, George. A. K. Manos remained in Europe until 1921, when he again returned to Greenville alone. His wife remained at the home of her parents in Greece, and she never returned to the United States until shortly before the reference held in the present case in January, 1953, when she, together with her son, George Stavrakos Manos, came to Greenville with her brother Harry Stavrakos, also known as Harry Stevenson, whom she had been visiting in Canada. On April 3, 1923, A. K. Manos instituted a proceeding for divorce in the Superior Court of Stephens County, Georgia, and a decree of divorce was issued by that court on October 22, 1923. In April, 1925, he married Eugenia Manos, appellant herein.

Exceptions III and IV charge that the circuit judge erred in holding that the decree of divorce thus obtained by A. K. Manos was invalid and that Marigo Manos was therefore his lawful surviving wife. The divorce was attacked on two grounds, to wit: (1) that the court was without jurisdiction of the subject matter, because the plaintiff had not resided in Georgia for twelve months prior to the commencement of the action and had not acquired a domicile there; and (2) that the court did not have jurisdiction of the defendant.

In support of the attack on the first ground, the following evidence was adduced:

1. The will of A. K. Manos, which was written in his own handwriting under date October 24, 1938, recited that he had been a resident of Greenville, South Carolina, for more than thirty-five years.

2. The Greenville city directories for the years 1915 through 1923 showed him as a resident of that city.

3. Under date January 26, 1923, he had obtained licenses from the city of Greenville to operate in that city a fruit and lunchroom business on West Washington Street.

4. The testimony of George P. Manos, the substance of which was as follows:

Witness, a nephew of A. K. Manos, and originally from the same neighborhood in Greece, came to America in 1914, and in 1917 went into partnership with A. K. Manos. Witness was his partner and co-lessee of the business property in Greenville under a lease for the period December 1, 1921 —April 1, 1924. Continuously from the commencement of the lease A. K. Manos resided in Greenville. In April, 1923, witness drove A. K. Manos in an automobile from Greenville to Toccoa, Georgia. They left Greenville about 5:00 o'clock p. m. one day, spent that night in Toccoa (which is the county seat of Stephens County), and returned to Greenville the following afternoon. During the morning they were in Toccoa, witness stayed in a store and "relieved the man there to go with Mr. A. K. Manos somewhere in the court about some business." After their return to Greenville, A. K. Manos continued to look after his business there as usual. In October of the same year, witness made another trip to Toccoa with A. K. Manos, leaving Greenville one afternoon and returning from Toccoa the following evening. Thereafter A. K. Manos stayed in Greenville and conducted his business as usual. On neither of the two trips to Toccoa did A. K. Manos take witness to a residence or a home or anywhere except to the store above referred to. Under cross-examination, this witness admitted his inability to remember the dates of other trips that he may have made that long ago; admitted that in 1929 and 1930 he had joined with A. K. Manos in the execution of deeds on which A. K. Manos' second wife, Eugenia, had renounced dower, and that in 1935 he had accepted a deed from A. K. Manos with like renunciation of dower; and that he had encouraged Eugenia to marry A. K. Manos.

5. The testimony of a Georgia lawyer, who testified that at the request of her counsel he had made an extensive investigation in Toccoa to find any evidence indicating that A. K. Manos had lived there in 1922 or 1923; that he had

examined the tax books of the city of Toccoa and of the county of Stephens, the voting lists, the city records for special taxes, water and light bills, and that he had made inquiries of some of the older residents and of the Chief of Police, and found no trace of him.

On the issue now under consideration, the second wife offered no evidence other than the record of the Georgia proceeding. The decree in that proceeding contained no recital or express finding as to residence; there was no record of any testimony; and we find nothing in the record with regard to residence other than the allegation in the unverified complaint "that petitioner is a resident of the State of Georgia, and has been more than twelve months prior to the filing of this petition."

Upon this showing, the circuit judge was amply warranted in holding that A. K. Manos was not *bona fide* domiciled in Georgia at the time of the commencement of the divorce proceeding, and that therefore the Georgia court was without jurisdiction. It is well settled that want of jurisdiction over either the person or the subject matter is open to inquiry where a judgment rendered in one state is challenged in another. *Milliken v. Meyer,* 311 U. S. 457, 61 S. Ct. 339, 85 L. Ed. 278; *Williams v. State of North Carolina,* 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577; *May v. Anderson,* 345 U. S. 528, 73 S. Ct. 840, 97 L. Ed. 1221.

We are satisfied, upon the record before us, that the Georgia court was without jurisdiction of the defendant. It is undisputed that she made no appearance in the divorce proceeding, and her testimony that she was in Greece at that time and received no notice of any kind concerning the divorce proceeding, is without contradiction. The jurisdictional issue here must be determined on the basis of constructive service. The Georgia statute, Code, §§ 81-206 to 81-208, providing for constructive service requires:

1. Publication in a newspaper of a notice containing the names of the parties, with a caption setting forth the court and term and character of the action, etc.

2. In all cases where the residence or abiding place of the absent or non-resident party is known, mailing to such party by the clerk of the court of a copy of the newspaper containing such published notice, plainly marked.

3. That the judge trying the case determine, before the trial, whether such service has been properly perfected, and write an order to that effect upon the petition in the case as showing service thereof, such order also to be entered upon the minutes of the court.

These requirements are jurisdictional, and failure to comply with them renders the judgment void under Georgia law. *Stiles v. Stiles,* 183 Ga. 199, 187 S. E. 870.

The evidence here shows that a notice (to which we shall later refer more fully) was published in a local newspaper, the Toccoa Record, for the period of time required by the Georgia statute. But there is no evidence, by the record of the divorce proceeding or otherwise, that a copy of the newspaper was mailed to the defendant. There is no entry by the clerk on the petition or writ in the case to the effect that a copy of the newspaper containing the notice had been mailed; nor was there written upon the petition or entered upon the minutes any order by the judge before trial, to the effect that he had determined that service upon the defendant had been properly effected. There is, in the decree of divorce, which is dated October 22, 1923, a recital that the defendant "was duly served by publication." Such recital is, of course, not conclusive of the jurisdictional issue in the courts of another state. *Williams v. State of North Carolina, supra.* The recital of service is belied by the evidence here.

Moreover, the record of the divorce proceeding shows variance so substantial between the correct name of the de-

fendant and the names attributed to her in the original petition filed April 3, 1923, and in the citation or summons of the same date, and in the published notice, as to negative any presumption in favor of the service. In the original petition she is referred to as Marie Maniotos or Manos. In the citation or summons, her name appears as "Marie Manos (Greek, Marie Staurokos Manos)". In the published notice it appears as "Marie Maniotos." And yet, in a petition sworn to by A. K. Manos under date October 5, 1929, for leave to amend the original petition, it was stated that the defendant in the case was "Mary A. Manos, who before her marriage was Marigo G. Stavrakou," and that "the original petition in said case incorrectly stated the Greek name of petitioner and of his then wife and said names read in said original petition, Alexander K. Manitos, and his wife's name as Marie Manitos, and her name before marriage as Marie Staurokos, their correct names being, Alexandros K. Maniatis and Marigo G. Stavrakou."

The well established rule is that where constructive service by publication is relied upon the published notice must correctly identify the parties to the action and accurately state their names, especially that of the defendant upon whom service is thus sought to be made. 42 Am. Jur. "Process," Par. 97. While it has been frequently held, under the doctrine of *idem sonans,* that if the name as spelled in the published notice, when pronounced according to commonly accepted methods, would convey to the ear a sound practically identical with that of the correctly spelled name, as commonly pronounced, the designation is sufficient, the doctrine of *idem sonans* is not properly applicable in divorce cases, for the obvious reason that the plaintiff well knows the true name of the defendant. 17 Am. Jur. "Divorce and Separation," Par. 290. As was said in *Hubner v. Reickhoff,* 103 Iowa 368, 72 N. W. 540, 541, 64 Am. St. Rep. 191:

"The corrupt practices in divorce proceedings could hardly be aided by the courts better than to open the door for a

variance between the actual name of the defendant in the record and that in the notice constituting the service, and giving the court jurisdiction."

Exceptions V, XXV and XXVI charge that the court below erred in holding George Stavrakos Manos to be the legitimate son of A. K. Manos. On this factual issue the Master and the circuit judge concurred, and their finding will not be disturbed unless they are without support in the evidence or are against the clear preponderance of the evidence. *Newton v. Batson*, 223 S. C. 545, 77 S. E. (2d) 212. It being undisputed that A. K. Manos and Marigo Manos were legally married at the time of George's birth, there arises in his favor the presumption of legitimacy, which, though rebuttable, is one of the strongest known to the law. *Tarleton v. Thompson*, 125 S. C. 182, 118 S. E. 421. The burden of proof in such cases is upon the party impeaching the legitimacy,—here Eugenia Manos. All that she offers in support of that burden is (1) the recital in the will of A. K. Manos concerning George, "who is considered my son because he was born before my marriage with said Marigo had been dissolved, whom, however, I do not recognize as my own true son," and (2) the allegations of Paragraph 4 of the original petition of A. K. Manos in the Georgia divorce proceeding in April, 1923.

As to the recital in the will, it is clear that this cannot be accepted as evidence of illegitimacy. Neither husband nor wife may testify as to non-access between them in any case where the legitimacy of a child born in wedlock is in issue. *Barr's Next of Kin v. Cherokee, Inc.*, 220 S. C. 447, 68 S. E. (2d) 440.

The same principle excludes from consideration the allegations of Paragraph 4 of the original petition in the divorce proceedings, which read as follows:

"4. That in the year 1917, his wife returned to Greece without your petitioner and he did not see her for more than twelve months, and after the expiration of twelve

months or thereabouts your petitioner went to Greece to see his said wife and bring her back to America. When he arrived in Greece he found his wife pregnant with child and more than five months had elapsed since she became pregnant. That about four months afterwards she gave birth to a child which was not your petitioner's and the father of said child is unknown to your petitioner."

But in addition to their incompetency on the issue of legitimacy, these allegations were expressly denied and repudiated, so far as the claim of non-access is concerned, by A. K. Manos himself in his sworn petition to the Georgia court almost six years after the final decree, for leave to amend the original petition, the petition for leave to amend stating that the allegations of paragraph 4 of the original petition were incorrect and should be amended to read as follows:

"4. That in the year 1913, petitioner and his wife returned to Greece from the United States of America, and petitioner remained in Greece living with his said wife until the year 1915, when he returned to the United States alone, leaving his wife in Greece; that in 1919 petitioner returned to Greece from the United States of America and lived with his said wife for a period of five months when he discovered, in February, 1920, that his said wife was pregnant with child; that as soon as petitioner discovered that his said wife was pregnant he sent his said wife to her father's home to live and he separated himself from her because he believed and had every good reason to believe that she was pregnant by some other man than himself; that his belief was well founded, as it developed, and in four months after the said separation his said wife gave birth to a child which was not your petitioner's as petitioner has every good reason to believe, and the father of said child is unknown to your petitioner."

The lower court, concurring with the Master, properly held that there was no competent evidence to rebut the presumption of legitimacy.

Appellant contends (Exception XIX) that the lower court erred in permitting Harry G. Stevenson to act as interpreter in taking the testimony of Marigo Manos, for the reason that he is her brother, had testified in her behalf, and therefore was not a disinterested person. The qualifications of an interpreter depend much on the circumstances, and should be left for the determination of the trial court. Wigmore, Evidence, Third Edition, Vol. III, Sec. 811. Thus the examination of a deaf mute through her brother as interpreter has been permitted. *Burgess v. State,* 1951, 256 Ala. 5, 53 So. (2d) 568. A husband has been held not disqualified to interpret for his wife. *Claycomb v. State,* 1923, 22 Okl. Cr. 315, 211 P. 429. A father has been permitted, over objection, to interpret the testimony of his wife in an action in which his child was plaintiff. *Western & A. R. Co. v. Deitch,* 136 Ga. 46, 70 S. E. 798. And in a prosecution for rape, where the prosecuting witness was so tongue-tied that she could not be understood by strangers, it was held not improper to appoint her mother as interpreter. *Almon v. State,* 21 Ala. App. 466, 109 So. 371. And the general rule appears to be that it is not an abuse of discretion on the part of a trial judge to accept a person as interpreter who is also a witness in the case. See the annotation in 172 A. L. R. at pages 941, 943 and 945.

In the case at bar, there is no suggestion that in his interpretation Mr. Stevenson falsified or distorted questions or answers, or that appellant was in anywise prejudiced by his performance of the function of interpreter.

In their brief, appellant's counsel urge that the testimony of the witness should not have been considered because the interpreter was not sworn. The point is not raised by any exception, and therefore will not be considered.

Appellant further contends that Marigo Manos and George Stavrakos Manos are estopped to question the validity of the Georgia divorce, and cites as authority for such

contention *Watson v. Watson,* 172 S. C. 362, 174 S. E. 33, and *Ex parte Nimmer,* 212 S. C. 311, 47 S. E. (2d) 716.

In the *Watson case,* the decedent had separated from his wife under an agreement whereby in consideration of a substantial sum of money she had bound herself not to claim dower or any other interest in his estate. Thereafter he had gone to Nevada where he brought proceedings for divorce against her, process being served upon her by publication and also by delivery to her personally in South Carolina. The Nevada divorce having been obtained, decedent returned to South Carolina and thereafter married one Lougenia Hathcock, having first assured her that he was free to marry and had a valid divorce from his former wife. Upon his death some five years later, his second wife elected to take dower instead of the life estate left to her by his will. Her claim was contested by the first wife and the children of the decedent. As to the claim of the first wife, the court held that she was estopped by her own agreement and acceptance of the consideration paid to her therefor. And the court further held that since the decedent would have been estopped to assail the validity of the divorce and consequently of his second marriage, his heirs were likewise estopped "from disputing the validity of the marriage in so far as it relates to property rights involved" [172 S. C. 362, 174 S. E. 36], and that therefore the second wife was entitled to have her dower admeasured.

In the *Nimmer case,* the contest was between the father and the alleged widow of a decedent as to priority of right to letters of administration. It was held that the alleged widow, who had actively participated with decedent in fraudulently procuring for herself a divorce from her former husband, could not invoke the equitable doctrine of estoppel as against decedent's father. The court expressly limited its decision to the precise facts of the case, saying [212 S. C. 311, 47 S. E. (2d) 722]:

"In conclusion, we wish to emphasize that our decision is confined to the precise facts before us. We are not con-

fronted with the claim of a surviving wife who occupies an innocent position in connection with the foreign divorce sought to be attacked. There are no children of the marriage upon whom the imputation of illegitimacy may be cast. We leave untouched the question of the application of estoppel under circumstances other than those now presented."

No further discussion of the *Nimmer case* is necessary in view of the wide difference in the factual situation there from that in the case at bar. The facts of the *Watson case,* while in some respects similar to those of the instant case, are different in several important particulars. In the *Watson case* the first wife was properly held estopped to question the validity of the divorce because of her agreement. The equities upon which the court based its holding that the children were estopped were not discussed in the Master's report, which was adopted as the opinion of this court, but it appears from the testimony in that case that they had known of their father's divorce and had accepted as his wife the woman whom he had married thereafter. By the Georgia divorce now under consideration, Marigo Manos was convicted without a hearing, of adultery; and her infant was branded as a bastard. That was three years after A. K. Manos had left his pregnant wife at her father's home in Greece, and there is no evidence that she or her son had any notice of the divorce proceeding, or any opportunity to meet the charges upon which it was based, until the present action was brought. Her testimony that no process was served upon her and that she had no notice of the proceeding is uncontradicted. Are she and her son now estopped to question the validity of the divorce?

The doctrine of estoppel, being an equitable one, is essentially flexible, and therefore to be applied or denied as the equities between the parties may preponderate. An inflexible rule that wherever a decedent would have been estopped to question the validity of a divorce obtained by him or with his help his heirs are likewise estopped, would open the door to fraudulent divorce pro-

ceedings, validate them as against a wife and children, however innocent, and require, regardless of the equities of the particular case, the ratification of the decedent's fraudulent conduct. *Cf. Ainscow v. Alexander,* 1944, 28 Del. Ch. 545, 39 A. (2d) 54, and *Urquhart v. Urquhart,* 1947, 272 App. Div. 60, 69 N. Y. S. (2d) 57, affirmed without opinion in 297 N. Y. 689, 77 N. E. (2d) 7.

There is no suggestion in the record here of any wrongdoing on the part of Eugenia Manos; but under the facts of this case we agree with the circuit court that the equities preponderate in favor of Marigo Manos and her son. Moreover, as the circuit decree points out, it is conceded in the briefs that Marigo Manos is not estopped, since she is claiming dower and not as an heir, and further, that George Stavrakos Manos is invoking a statute, Code 1952, Sections 19-238 and 57-310, that was expressly enacted for his protection. Section 19-238 reads as follows:

"If any person who is an inhabitant of this State or who has any estate therein shall beget any bastard child or shall live in adultery with a woman, such person having a wife or lawful children of his own living, and shall give, by legacy or devise, for the use and benefit of the woman with whom he lives in adultery or of his bastard child or children, any larger or greater proportion of the real clear value of his estate, real or personal, after paying of his debts than one-fourth part thereof, such legacy or devise shall be null and void for so much of the amount or value thereof as shall or may exceed such fourth part of his real and personal estate." Section 57-310, in substantially the same language, similarly limits the power of such person to "give, settle or conevy, either in trust or by direct conveyance, by deed of gift, legacy or devise or by any other ways or means whatsoever, for the use and benefit of such woman with whom he lives in adultery or of his bastard child or children." The doctrine of estoppel cannot be invoked to thwart the public policy of the State thus declared.

The circuit court held that Eugenia Manos was not the lawful surviving wife of A. K. Manos, and that she was restricted in taking under his will by the provisions of Sections 19-238 and 57-310 of the 1952 Code and thereby not entitled to take "any larger or greater proportion of the real clear value of his estate, real or personal, after payment of his debts, than one-fourth part thereof," and that the balance of the estate, subject to the dower of Marigo Manos, passed to George Stavrakos Manos as the testator's lawful child and heir. In this appellant claims (Exception II) that the circuit court erred because:

(a) Eugenia Manos was the lawful surviving wife;

(b) The validity of the devise and bequest to her was not attacked by Marigo Manos;

(c) The validity of the devise and bequest to her was not attacked by George Stavrakos Manos;

(d) Under Sections 19-238 and 57-310 of the 1952 Code, a bequest or devise cannot be attacked collaterally;

(e) An attack upon the validity of a bequest or devise under Sections 19-238 and 57-310 must be made "in a direct proceeding with all parties before the court in such a way as to affect all the property of the decedent located in South Carolina"; and

(f) Neither Marigo Manos nor George Stavrakos Manos has alleged that A. K. Manos was living in adultery with Eugenia Manos at the time of his death.

The substance of the pleadings has been set out in the earlier portion of this opinion, and need not be here repeated. By her answer to the complaint Marigo Manos alleged that she was the lawful surviving wife and as such entitled to dower; by her answer Eugenia denied that either Marigo or George had any interest in the premises, and alleged that she was the lawful surviving wife; by his cross-answer George alleged that the life estate given to Eugenia in the property under foreclosure, together with other properties of the decedent situate in South Carolina,

was invalid so far as its value exceeded one-fourth of the net value of the estate in South Carolina. The issue as to which of the two, Marigo or Eugenia, was the lawful surviving wife, was thus clearly made. That Marigo did not invoke the provisions of the statute is immaterial; she was claiming dower, not as an heir. The provisions of the statute were invoked by the cross-answer of George; it was not necessary that he refer to the Code section by number. *Gantt v. Columbia Coca-Cola Bottling Co.,* 193 S. C. 51, 7 S. E. (2d) 641, 127 A. L. R. 1185. If appellant had desired that the allegations be made more specific, she should have made a motion to that end in the trial court.

We have already referred to the order of June 20, 1942, to which appellant consented, and which directed that the excess proceeds of the sale of the property under foreclosure be paid to the executor and "held by him pending the final determination as to who is entitled as devisees, legatees, or heirs at law of the Estate of A. K. Manos, deceased, to said portion of his estate." Such determination, under the pleadings, obviously involved determination of the legality of the marriage between decedent and Eugenia; and that issue depended upon the validity or invalidity of decedent's divorce from Marigo. We see no merit in this exception, and it is overruled.

Exception XIV charges error in admitting the testimony, by deposition, of the witness, Ralph T. Clark, a lawyer who testified that he had examined the tax books of Stephens County, Georgia, during the period of A. K. Manos' residence there, and had not found the name of A. K. Manos listed; and that he had likewise checked the registration or voters' lists for the City of Toccoa and for the County of Stephens, and also the special city tax record books, cash books and receipt books, with like result. Appellant contends that the introduction in evidence of the books of original entry as being the best evidence of the facts testified to, should have been required. But it is generally held that the non-existence of an entry in a record

book does not require the book's production for proof. Wigmore, Evidence, 3rd Edition, Section 1244(5). *Christoffel v. U. S.,* 1952, 91 U. S. App. D. C. 241, 200 F. (2d) 734; *Peters v. Adcock,* 1943, 196 Ga. 118, 26 S. E. (2d) 342; *Blair's Foodland v. Shuman's Foodland,* 1942, 311 Mass. 172, 40 N. E. (2d) 303. *Cf. Greer v. Equitable Life Assur. Soc.,* 180 S. C. 162, 185 S. E. 68.

Exception XVI reads as follows:

"That the Court erred in admitting and considering as competent evidence, over objection, a certain document purporting to be a memorandum from City Directories of the City of Greenville. (Exhibit A-18)

Specification of Error:

"(a) That said evidence is incompetent, irrelevant and immaterial.

"(b) That the original books are the best evidence of the matters therein contained and that secondary evidence in the form of a memorandum prepared by counsel for Marigo Manos is, therefore, inadmissible."

The record is by no means clear as to what transpired concerning the introduction of this evidence. We quote from the transcript:

"Mr. Martin: I wish to introduce a copy of the City Directory for the City of Greenville for the years 1915 and 1916 (sic). I have exactly what the notation was. I presume my friends will object to it on the same grounds.

"Mr. Burgess: I haven't seen it.

"Mr. Martin: I will show you. I have the six books in my office. I don't want to lug them up here but I can do it if I have to. I will show them to you gentlemen—bring them to you or let you come by my office and see them. I have them marked.

"Mr. Burgess: We object to the introduction of these City Directories upon the grounds that they are irrelevant and immaterial to any issues properly before the court. We ob-

ject to the memorandum of what those books contain. If Mr. Martin wants to introduce them later and withdraw them—all right. We don't want to encumber the record. The position we take as to the relevancy, we were compelled to object to the method of proof.

"Mr. Martin: I will lay these records on Judge Inman's desk before noon tomorrow and that will be marked in red pencil—what appears at the name of A. K. Manos and it will be dogeared. Your Honor, mark that as an exhibit?

"Mr. Burgess: We object to that, he has a notation there and if he is going to introduce the books.

"Mr. Martin: I will mark this out—I made that myself.

"By the Master: Admitted subject to the objection and marked Ex. A-18."

In appellant's brief, the evidence in question is referred to as "a memorandum from City Directories of Greenville, South Carolina, for the years 1915 and 1916." In respondents' brief, it is referred to as "the city directories showing his places of business and residence during the whole course of years including 1923," and in the "Index to Exhibits" appended to respondent's brief it is listed as "Exhibit A-18- City Directories, showing residence of A. K. Manos 1915- 1923."

Except as above noted, the record before us is devoid of any reference to the evidence objected to, and the contents of Exhibit A-18 are not disclosed. We can only assume that the city directories, for the years 1915-1916, or for the years 1915-1923, or a memorandum of entries therein, were offered in support of respondents' contention that at and before the commencement of the Georgia divorce proceedings, A. K. Manos was domiciled in Greenville, S. C.

On the issue of domicile, a city directory is admissible. Wigmore on Evidence, 3rd Edition, Vol. 6, Section 1708. *In re Gilbert's Estate,* 18 N. J. Misc. 540, 15 A. (2d) 111.

If the directories were available, of course a memorandum of their contents would be objectionable as not the best evidence; but its admission in the present case could not be considered as other than harmless error in view of its cumulative character, its relative unimportance, and the fact that the other evidence in the case was amply sufficient to justify the court's finding on the issue of domicile.

The remaining exceptions, other than one relating to Judge Griffith's order, settling the case on appeal, are concerned with the admission of evidence. They have been considered, but need not be discussed at length. Suffice it to say that the evidence objected to was not necessary to support the findings of the court below on either of the issues to which it was directed, namely: the validity of the Georgia divorce, and the legitimacy of George Stavrakos Manos. The findings of the court below on these issues were amply, and in our opinion conclusively, warranted by the other evidence in the case.

Finally, appellant excepts to the provision in Judge Griffith's order settling the case on appeal, wherein the "Statement" was amended to include the following paragraph:

"That among claims filed against the estate of A. K. Manos in Probate Court was a note for approximately thirty thousand ($30,000.00) dollars, by J. K. Manos. This note and claim would have practically absorbed the entire estate, but after hearings thereon it was denied. The contest over this note consumed quite a period of time and was not decided until——day of ———, 1950. The hearings between parties herein involved were held subsequent thereto."

Appellant states that the reason given by the court for allowing this amendment was that it was explanatory of delay and of the necessity of awaiting final determination of the claim before proceeding with the instant case, and contends that the statement is thus argumentative in support of the judgment of the lower court, and therefore

improper under Rule 4, Section 3 of the rules of this court. While the paragraph above quoted is not strictly "necessary to a proper understanding and decision of the questions to be decided," it does not materially encumber the record, and no prejudice by reason of its inclusion has been shown. In the exercise of his judgment in settling the appeal record the circuit judge is entitled to reasonable latitude. *Copeland v. Craig,* 193 S. C. 484, 512, 8 S. E. (2d) 858.

The judgment of the lower court is affirmed.

STUKES and TAYLOR, JJ., and BRUCE LITTLEJOHN, A. A. J., concur.

OXNER, J., did not participate.