## 20503

Joette R. SMOAK, Appellant, v. Gerald C. SMOAK, Respondent.

(237 S. E. (2d) 372)

*I. A. Smoak, Jr.,* of *Smoak and Smoak,* Walterboro, *for Appellant,*

*Morris D. Rosen,* of Charleston, *for Respondent,*

August 31, 1977.

LITTLEJOHN, Justice:

This action was commenced by the plaintiff-appellant (wife) against the defendant-respondent (husband) on March 13, 1972, for legal separation, alimony, child custody and support, use of home and other properties, and attorney's fees. On April 29, 1972, a consent order for payments *pendente lite* was entered. Thereafter, an answer to the complaint was filed, denying the material allegations and pleading § 10-605, Code of Laws of South Carolina (1962), so that the verification did not apply to the desertion and adultery allegations of the complaint.[1]

This cause of action remained substantially dormant until the husband commenced a separate action in 1975 against the wife in the Civil and Criminal Court of Colleton County for a complete divorce on the "no fault" ground of three years continuous separation, under Code § 20-101(5). The divorce was granted and no appeal was taken.

The divorce action did not terminate this action, and there remained for adjudication the wife's entitlement to alimony, custody and support for the children, her claim to possession of the residence she occupied, and attorney's fees.

---

[1] The statute reads as follows:

"§ 10-605. When verification unnecessary.—The verification may be omitted when an admission of the truth of the allegation might subject the party to prosecution for felony or when the party called upon to verify would be privileged from testifying as a witness to the truth of any matter denied by such pleading."

On October 13, 1975, the husband filed an amended answer alleging, as a bar to her right to alimony, that the wife, since 1971, had probably committed adultery with three named men.

A referee took the testimony and reported it to the judge without recommendation.

After a hearing, the judge granted the wife custody and support for the children and use of the home until the youngest reaches the age of 18, but found her guilty of adultery and denied her alimony and all rights in the husband's property. The wife has appealed.

The facts are not greatly in dispute. This couple was married in 1954 and lived and cohabitated together as husband and wife in Walterboro until about October 6, 1971. To the marriage was born Debra Jean, now about 21, Gerald, Jr., now about 18, and Phyllis Renee, now about 17.

The husband is a prosperous lawyer in Walterboro. Prior to October, 1971, he became infatuated with and developed an adulterous relation with Nancy Thomas. The relationship was little, if at all, concealed, and resulted in the desertion of the wife and children on or about October 6, 1971.

Thereafter, on February 18, 1972, the husband procured a decree of divorce in the Civil Court of Port-au-Prince, Republic of Haiti. Several weeks later, he presented the wife an authenticated copy of the decree. In truth the divorce was invalid.

After the date of the Haitian decree, he posed as an unmarried man. On the following dates he executed deeds and/or mortgages, without dower renunciation, reciting that he was an unmarried man: March 7, 1973 (2 mortgages), May 25, 1973, August 1, 1973, August 16, 1974, December 9, 1974, December 27, 1974 (2 deeds), April 1, 1975, and April 3, 1975. In so doing, he relied upon the Haitian divorce to his own property right advantage, securing loans for the mortgages and payments for the deeds.

It was also to the detriment of the potential property rights of the wife. Certainly, it ignored her dower interests.

On August 14, 1974, he executed an agreement with a country club, reciting that he was married to "Nancy Smoak." On the same date he executed a swim program card, reciting that the participating family members were himself, Nancy, and her two children, Roger and Susan.

Over an extended time, he and Nancy resided together in an adjoining county, holding themselves out to the public as a married couple. We think it a fair appraisal to say that the relationship would have ripened into a common law marriage except for the fact that he was not divorced and could not legally enter into a common law or a statutory marriage.

The no-fault divorce was granted on June 11, 1975. The husband married again two days later. He and his new wife now reside in Walterboro, where for about 20 years he has maintained his law office.

Before the referee, the court below, and this court, the husband concedes that by reason of his conduct, the wife is entitled to alimony unless she, herself is disqualified from receiving such by reason of adultery. There is no contention that her conduct contributed to the disruption of the marital relationship. The lower court held that "the conduct of which the [husband] complains occurred after the Decree of the Court of the Republic of Haiti." Our statute [2] provides that . . . "no alimony shall be granted to an adulterous wife."

During the taking of the testimony, the wife admitted associations with other men after the Haitian divorce, but denied any adultery. She refused to answer some questions concerning her travels, pleading the Fifth Amendment, thereby denying to the husband the opportunity to develop

[2] § 20-113.

all the facts incident to the associations. The wife's contention is set out in her brief as follows:

"It is the Plaintiff's position that Defendant, having deserted her in October, 1971, without just cause, excuse or provocation; having instituted in the Civil Court of Port-au-Prince in the Republic of Haiti an action for divorce from Plaintiff and knowingly sought and invoked the jurisdiction of that Court, submitted himself thereto and obtained therefrom a Decree of Divorce on February 18, 1972; and thereafter and for a period of more than three (3) years having asserted and affirmed the validity of such divorce as manifested in the several designated transactions, and having further affirmed the validity thereof, in August, 1974, by cohabiting with and holding himself out as the husband of one Nancy Smoak, is estopped by judgment, record and conduct to assert the invalidity of such foreign divorce; to assert, notwithstanding such foreign divorce and his several acts in affirmation of the validity thereof, including his marriage, either real or pretended, to Nancy, that Plaintiff thereafter remained his wife; and to assert any act or conduct on the part of the Plaintiff as a bar to her claim for alimony alleged to have occurred subsequent to the date of the entry of the foreign divorce decree."

The husband also plead the Fifth Amendment to several questions, thereby denying to the wife the opportunity to develop all of the facts. It is the husband's contention that he need not answer inasmuch as he has admitted his guilt.

The lower court discarded the wife's contention that the husband was estopped to assert the validity of the Haitian divorce decree. He held that the wife was guilty of adultery after the Haitian decree. (There was no contention of adultery prior thereto.) The judge fortified his ruling by relying upon a body of law to the effect that a plaintiff who invokes the Fifth Amendment privilege may not prevail-citing 4 A. L. R. (3d) 539, and *Stockham v. Stockham,* Fla., 168 So. (2d) 320 (1964).

The wife has interposed several exceptions, raising six questions as set out in her brief, but we think that a determination of the first question makes all others moot. That question raises the issue: Did the lower court err in failing to hold that the husband is estopped to assert the invalidity of the Haitian divorce. We think it did err, and accordingly we reverse and remand.

We need not delicately weigh the circumstantial evidence to determine if adultery on the part of the wife has been proved. Nor need we decide whether pleading the Fifth Amendment has any effect on her claim.

The evidence recited hereinabove conclusively proves that the husband accepted the privileges, benefits and fruits of the Haitian judgment of divorce. He has in effect said to this Court: "Even after the Haitian decree and my subsequent conduct, I was still entitled to the loyalty of my wife." However, it is the position of the wife that a party who has obtained a fraudulent judgment of divorce should not be permitted to enjoy its benefits, or be allowed to assert its invalidity for his own advantage. We agree. The position of the husband is untenable, and we hold that he is estopped to assert the invalidity of the Haitian judgment of divorce. The wife could attack it, but he, having accepted its benefits, may not. The void judgment of divorce did not bind either party, but having procured such a judgment to be entered in his favor, the husband may not now in good conscience be heard to impeach it.

As pointed out above, there is no contention of improper conduct on the part of the wife prior to the Haitian divorce, and the lower court found that the conduct complained of by the husband, occurred after that divorce decree was procured by him.

At the commencement of this action, the husband was without the semblance of a defense. Had the action proceeded timely, as it normally might have, the issue before

us would not have been raised. Apparently the wife has never sought a divorce, but was content to accept the *pendente lite* order and the support and other benefits which it provided.

Counsel for the husband argues that all of the elements of equitable estoppel are not present and that, accordingly, the husband is not estopped to assert the invalidity of the Haitian divorce decree. He argues that the wife never relied upon the decree to her detriment and that both parties knew that the fraudulent decree was invalid. In *Peoples Nat. Bank of Greenville v. Manos Bros, Inc.,* 226 S. C. 257, 84 S. E. (2d) 857 (1954), this Court noted:

"The doctrine of estoppel, being an equitable one, is essentially flexible, and therefore to be applied or denied as the equities between the parties may preponderate."

In the case of *McNeir v. McNeir,* 178 Va. 285, 16 S. E. (2d) 632 (1941), the Supreme Court of Virginia, quoting from American Jurisprudence, said:

"The party who obtained the divorce, even though such a decree is not entitled to recognition, is generally regarded as estopped from asserting continuance of the matrimonial relation. . . . The one who has participated in obtaining a fraudulent divorce is not entitled to allege its invalidity."

In 27B C. J. S. *Divorce* § 364, we find the following:

"Subject to some exceptions, limitations, or authority to the contrary, as discussed below, particularly in the case of 'mail-order divorces,' in general, the doctrine of laches and estoppel has been held applicable to foreign divorces. Thus, in a proper case, a person may be estopped to attack, impeach, or deny the validity of a foreign divorce decree, as where he or she obtained the decree, participated in the fraud or wrong by which the decree was obtained, financed the proceeding, voluntarily appeared and participated in the foreign action, did some act which in itself recognized the validity of the decree, or accepted the benefits of the decree. . . ."

Also, in 27A C. J. S. *Divorce* § 173(3):

"A party to a divorce decree and those in privity with him may be estopped to deny the validity of the decree *even though all of the elements necessary to an application of the doctrine of estoppel proper as usually applied to ordinary cases of equitable cognizance may not be present. . . .*" (Emphasis added)

The exact point involved in this case has not heretofore been before this Court, but several of our cases have held that where a husband obtains a void divorce in a foreign jurisdiction, he may not, upon becoming a widower, claim an interest in the property of the wife he divorced, because he is estopped to assert the invalidity of the divorce he wrongfully procured. *Ex Parte Nimmer*, 212 S. C. 311, 47 S. E. (2d) 716 (1948); *Way v. Way*, 132 S. C. 288, 128 S. E. 705 (1925). To hold that a husband under similar circumstances is estopped to deny that he should pay alimony, extends the rule but one short step.

The husband had no defense which he was entitled to assert and, accordingly, the questions which the wife refused to answer were irrelevant and immaterial to the issues for determination by the court. Her failure to answer the questions did not deprive the husband of any defense available to him, because the rule of etsoppel had closed his mouth to assert that which he would attempt to prove by her testimony.

Our determination hereinabove disposes of all of the issues raised on appeal, except the contention that the support allowed the children is inadequate. In the light of our ruling that the wife is entitled to alimony, we remand the case to the Court of Common Pleas for Colleton County for the purpose of reevaluating the child support and the house occupancy issue in light of such alimony as shall be awarded.

Reversed And Remanded.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.